## James A. Fox et al. *v.* George W. Matthews.

1. High court: appellant must show that the judgment of the court below is clearly wrong.—The inquiry in this court is not, whether the judgment or decree of the court below is manifestly correct, but whether it is clearly wrong ; and it is incumbent on the appellant or plaintiff in error, to show affirmatively and clearly the alleged error in the decree under revision ; and hence, when the evidence on a particular point is exactly equiponderant, whereby it is impossible for the judicial mind to determine the issue in favor of either party, with whatever of propriety the argument, that in such a case the decision should be against the party upon whom the affirmative of the issue rests, might be urged in the court below, it will be unavailing in this court to procure a reversal of the decree of the chancellor, because it would be impossible for this court to determine, that such decree was clearly erroneous.

2. Evidence : credibility of witness.—Where two witnesses are in direct conflict on the main fact in controversy, and one is fully sustained in every instance, where he testifies to material but incidental facts, of which the other witnesses are cognizant, and the other, in many instances, is contradicted by the other evidence in the cause, it is well settled that the testimony of the latter is discredited, and that the former is entitled to credit in relation to the fact in issue between them.

3. Louisiana law : rule in relation to verbal sales of slaves.—The Civil Code of Louisiana (see Arts. 461, 2255, 2415) declares slaves to be immovable property, and provides that all sales of immovable property or slaves, shall be made by Authentic Act, or under private signature, and that all verbal sales thereof shall be null, as well for third persons as for the parties themselves, and that testimonial proof of such sales shall not be admitted ; and that a verbal sale accompanied by actual delivery of the property, shall be good as well against the vendor as against the vendee who confesses it, when interrogated on oath. But the exposition, given by the courts of Louisiana to these

provisions of the Code, is not that they render a verbal sale absolutely null, but only confer a privilege to avoid the contract, which the parties can waive. See *Babineau* v. *Cormier*, 2 Cond. S. C. La. R. 518; *Strawbridge* v. *Warfield*, 4 La. R. 22.

4. SAME.—By the law of Louisiana, if the party against whom a verbal sale of slaves or other immovable property, is sought to be enforced, fail to except in the court of the first instance, to the introduction of testimonial proof establishing it, he will be considered as having waived his objections to the invalidity of the contract, and it will be enforced.

5. SAME: WHEN COURTS OF THIS STATE WILL ENFORCE VERBAL SALES OF SLAVES IN LOUISIANA.—The courts of this State will enforce a verbal sale of slaves made in Louisiana, if no objection be made in the court below, to the introduction of parol proof establishing it.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The facts necessary to be stated are set out in the opinion of the court.

*W. C. Smedes* and *George L. Potter*, for appellants,

Cited, Civil Code of Louisiana, Arts. 2231, 2255, 2415, 3257; 1 Story's Eq. §§ 202, 203; 3 Phil. Ev. (C. & H. notes), p. 1467, note 984.

*Fulton Anderson*, for appellee,

Cited, 19 La. R. 482; *Strawbridge* v. *Warfield*, 4 La. R. 22; *Hopkins* v. *Lacouture*, Id. 64; 1 Mart. Rep. N. S. 456; *Hanna* v. *Renfro*, 32 Miss. R. 125.

SMITH, C. J., delivered the opinion of the court.

This suit was brought in the Superior Court of Chancery against James A. Fox and Mrs. Elizabeth Fox, to recover the possession of certain slaves and hire for their detention, to which the complainant asserted title, and which he alleged had been surreptitiously taken into their possession by the defendants.

But two questions, at all material to be considered, are presented by the record. The first is a question purely of fact, and involves a consideration of the evidence adduced by the respective parties, to prove or disprove the contract or agreement alleged in the bill,

and upon which depends the right of the complainant to recover. The second is a question of law, arising upon the alleged invalidity of that contract or agreement.

The record is very voluminous; we shall therefore, in the very brief examination which we propose to make of these questions, direct our attention to those portions of it alone, which are essential to their proper comprehension.

Samuel S. Fox, deceased, the brother of the defendant, James A. Fox, and the husband of the defendant, Mrs. Elizabeth Fox, in 1836 or '37 purchased a plantation and slaves, situated in the parish of Madison, in the State of Louisiana, from John and James Pye, and removed there to live at the time he purchased, carrying with him his wife, and some time afterwards placed on the plantation the slave Eda, and such of her children as were then born. This slave originally belonged to the heirs of Alexander Brown, deceased, of whom Elizabeth Fox was one; and upon her intermarriage with Samuel S. Fox, he purchased the interest of the other heirs in said slave and her children then living, and took her into his possession. Samuel S. Fox owned on said plantation other slaves than those which he had purchased from John and James Pye; and in October, 1838, by an act passed before the notary public of the parish, he sold and conveyed the said plantation and a number of slaves with it, including Eda and her children, to the defendant, James A. Fox. By the same act, the whole of the property, land, slaves, &c., embraced in the conveyance, was specially mortgaged and hypothecated, to secure the payment of eight notes made by Samuel S., then outstanding and unpaid, for the aggregate sum of $34,000, and which, by the same act, the said James A. had assumed to pay. The complainant was then, or afterwards became, the holder of these notes, and having instituted proceedings, in the District Court for said parish, for the seizure and sale of the property thus mortgaged, recovered a judgment therein against said James A. for the sum of $34,000 and interest. The judgment was recovered in 1842, and on the 4th of February, 1843, an execution, issuing thereon, was levied by the sheriff upon all of the property, lands, slaves, &c., including the slave Eda and her children, embraced by the mortgage, and the same was taken into his custody. On the 4th of March, 1843, by an act passed before said

notary, the defendant, James A. Fox, conveyed to complainant all the land embraced in the mortgage, forty of the slaves, not including Eda and her children, and eight mules, in full satisfaction of complainant's judgment against him; and which conveyance was accepted as such by the attorney in fact of the complainant. At the same time, by a similar instrument, the said James A. conveyed to the defendant, Mrs. Fox, certain slaves, sixteen in number, not including Eda and her children, in full payment and satisfaction of all claim, right, and title, which she had to the property conveyed to complainant, by said James A., by the act above mentioned.

In regard to these facts there is no controversy between the parties.

The bill alleges, that after the mortgaged property was levied on by the sheriff as above stated, and advertised by him for sale, to wit, on the 4th of March, 1843, complainant, said James A. Fox, and Mrs. Elizabeth Fox, agreed to compromise the proceedings on these terms, to wit: said James A. was to surrender possession, and make a conveyance thereof of all the land and negroes embraced in the mortgage, with the exception of ten negroes and their offspring, to be selected by Mrs. Elizabeth Fox for herself, in full satisfaction of the judgment. That Mrs. Fox made her selection of the ten negroes and their offspring, and such selection did not include Eda and her children ; and that the negroes so chosen by Mrs. Fox were to be in lieu of, and in full satisfaction of, all the right and title and interest of Mrs. Fox and of James A. Fox to all the land, and the other negroes on said plantation, including Eda and her children.

In connection with the adjustment of the terms of the compromise, and explanatory of the understanding of the parties, it is further alleged that previous to the compromise, and while the same was the subject of discussion, it was mentioned by said Fox to J. M. Chilton, complainant's attorney, that Eda and her children were the property of Mrs. Elizabeth Fox, and the other heirs of said Alexander Brown ; and that therefore he (Fox) could not convey title to complainant for the same. To this, Chilton replied that Samuel S. Fox's title, whatever it was, had been by him conveyed to James A. Fox, and ought, under the mortgage, to pass to complainant ; and that if the heirs of Brown had any claim to said negroes, complainant would not only hold them with full notice

thereof, but cheerfully bind himself to surrender them on proof of their title; to which, complainant, by his attorney in fact, who was present, assented; that Chilton then, and on several other occasions, declared to said Fox that Brown's heirs had no claim to Eda and her children, and that they should not, with his consent, be excepted out of the conveyance to complainant. That the terms of the compromise were agreed on and settled at Vicksburg, between Edward A. Pye, attorney in fact of complainant, and said Chilton, acting for complainant, and the said James A. Fox; and that it was expressly understood that Eda and her children were not to be omitted in the conveyance to complainant.

The bill further states that several days after the terms of the compromise were agreed on, said Fox, with one Thomas N. Pierce, who had acted as counsel of complainant in obtaining the judgment, without notice to Chilton of their departure or design, went over to Louisiana, and proceeded to draw up articles for the consummation of said compromise; that before the deeds were written by Pierce, said Fox falsely and fraudulently informed said Pierce that Eda and her children were not his property, but were the property of Brown's heirs; by which representation Pierce was deceived, and induced not to include Eda and her children in the conveyance before mentioned. That said attorney in fact, Edward A. Pye, being then present, protested against the pretended claim set up in behalf of Brown's heirs; but stated that if said negroes were omitted from the conveyance, they must remain where they were, in his possession, on the plantation, as the property of complainant, until the said claim could be tested. And Pye, having ascertained what is above stated, in regard to the title of Samuel S. Fox to Eda and her children, and that Brown's heirs disclaimed all title to them, made known to James A. and Mrs. Elizabeth Fox, that he intended to retain them as the property of complainant, and placed Eda and her youngest children in charge of complainant's overseer; the two eldest having been carried off by said James A. Fox, without his consent. And that afterwards, on the — day of March, 1843, said Fox, clandestinely, and with such secrecy as to elude the vigilance of Pye and the overseer, who kept watch to prevent their removal, carried off Eda and her other children. And that said slaves were then in the State of Mississippi, in the possession of said James A. and Elizabeth

Fox, or their agents, who (James A. Fox), abandoning the pretext on which he induced Pierce to omit them from said conveyance, claims them as his own.

In her answer, Mrs. Fox denied, expressly, that she consented to compromise on the terms alleged in the bill. She stated that she lived upon the plantation from 1839 till the 20th of March, 1843; and from the death of her husband, Samuel S. Fox, in 1841, she had possession and control of the plantation and slaves, and claimed an interest therein. A few days before the levy she was called on by Pye; the terms of the compromise were discussed, and she then asserted a claim to Eda and her children. The terms agreed on between her and Pye were as follows: her claim to Eda and her children was to be recognized; ten negroes and their offspring, to be selected by herself, were to be conveyed to her, and she agreed to give possession to Pye, of the other slaves and the plantation, which possession she then held. She denies all knowledge of the negotiations between Fox, and Pye and Chilton; alleges, upon information and belief, that no such agreement as that stated in the bill was made; and asserts that if such agreement was made, it was made without her authority.

Her answer alleges further, that after the conference with Pye, he went to Vicksburg, and two or three days before the deeds were executed returned, accompanied by Jas. A. Fox and Pierce, and remained two or three days, discussing the terms of the compromise. The principal difficulty was in regard to Pierce's fee, but her paramount claim to Eda was conceded. On the occasion of the negroes being called out for selection, she called Pye's attention to Eda and her children, and asserted her claim. They were ordered to stand aside as her property—not involved in the compromise. She made her selection, not including Eda and her children, her claim to them being acquiesced in by all parties. Otherwise she would have made choice of them first, as they were of peculiar value to her, not to be estimated in money. The terms of the compromise were arranged by herself with Pye; and the deeds of conveyance set forth its true terms. She denies that Pye notified her that he intended to hold Eda and her children as the property of complainant; denies that Pye had possession of these negroes, or that he gave possession to Brown, the overseer, and

asserts they were in her possession; states that the two eldest children of Eda were sent off by her publicly; that Pye knew the fact and made no objection to their removal; and denies explicitly that Eda and her other children were clandestinely or secretly removed from the State of Louisiana.

In his answer, James A. Fox denies that the terms of the compromise agreed on, were those alleged in the bill; and avers that the true terms, and the whole of the contract for the compromise, are contained in the said deed of conveyance, executed by him to complainant. He denies that the ten negroes and six children, conveyed to Mrs. Fox, were to be in lieu and satisfaction of her and respondent's claim to all of the property in the mortgage; denies that he ever stated, he could not convey Eda and her children, or that they were the property of Brown's heirs; but alleges that he had no knowledge of these facts, and that early in February, 1843, they were mentioned to him, in the presence of said Pye, by said Chilton, at his office, who stated that he had been the attorney of the family, long familiar with their affairs, and that such was his impression: to which he replied he did not know; he only knew that he had bought those negroes from Samuel S. Fox; had a conveyance for them; but that it could not matter, there being property sufficient to pay the judgment without taking Eda and her children.

The answer of this respondent alleges, further, that on the 4th day of March, 1843, the day on which the compromise was made, a new and distinct agreement and understanding was made, said Pye, and complainant's original and principal counsel in the suit being present; it was reduced to writing, and constitutes the deed, above referred to, executed by respondent to complainant. And it denies that said compromise was reduced to writing without notice to Chilton, complainant's assistant counsel. On the contrary, it alleges that the agreement to go to Richmond, to complete the compromise, was made at said Chilton's office, in Vicksburg, on the preceding day. That Chilton declined going, and said it would be better that Pierce, the principal counsel, should go. And it gives the same account, in substance, of the transactions which occurred on the plantation, in Louisiana, when Mrs. Fox made her selection of the ten slaves, which is contained in her answer. That at Rich-

mond, where the deeds were executed, Pye said something about conveying the one-fifth part of Eda and her children; to which respondent replied, that Pye had agreed with Mrs. Fox that she should hold her (Eda) and her children; Pye said no more on the subject, and the deeds were executed without further opposition on his part; that it is untrue, as stated in the bill, respondent falsely and fraudulently informed Pierce that Eda and her children were not his property; and that Pierce, Pye, and respondent knew, that the reason why they were left out of the conveyance, was on account of Mrs. Fox's claim; and denies that Pye either protested against Mrs. Fox's claim to Eda and her children, or insisted that if left out of the conveyance, they should remain in his possession; denies that respondent ever agreed that they should remain in Pye's possession until the claim of Brown's heirs should be established; denies that Pye said anything to respondent or Mrs. Fox, until two weeks after the compromise; avers that Pye did not pretend to have possession, nor did he deliver possession to the overseer: they were in possession of the sheriff; that during the two weeks, after the compromise, that Mrs. Fox remained on the plantation, all the negroes reserved, including Eda and her children, were in her possession, and that if it ever was pretended that Pye was in possession, he never knew it; makes the same statement in reference to the removal of the two children which is made by Mrs. Fox; and denies that respondent removed them without the knowledge and consent of Pye; does not directly deny the allegation of the bill in reference to the clandestine removal of Eda and her other children, but states that, on the day Mrs. Fox removed, with her negroes, from the plantation, they were seen after daylight at her house.

A decree having been rendered for the complainant, the defendants were granted an appeal by order of this court.

It is manifest, from the foregoing extract of the pleadings, that there is a direct conflict between complainant and the defendants, not only in regard to the more important and material facts, but also in reference to many minor incidents involved in the transaction. The defendant, James A. Fox, who, according to the allegations of the bill, was the only party interested in the property in contest, and the only real party to the agreement on which the

right to recover is based, subsequent to the filing of his answer, released to his co-defendant, Mrs. Fox, and was examined as a witness for her. The contest is, therefore, exclusively between the latter and the complainant. It is, hence, important to a proper estimate of the evidence in the cause, to ascertain the true nature and character of the interest in the property claimed by Mrs. Fox.

And on this point, so far as it respects the immediate property involved, it is sufficient to remark, that it is conclusively shown by the evidence, that Mrs. Fox possessed, when the compromise was made, no claim or title, legal or equitable, other than that which she might have held to all of the property conveyed by her late husband, in 1839, to James A. Fox. And, in the absence of any effort, and of all proof to sustain it, it is at least difficult to imagine how she could claim any available interest in, or title to, the property, generally covered by the mortgage.

Counsel, entirely misapprehending the facts, say, James A. proves that Samuel S. Fox paid off the eight notes for $34,000, secured by the prior mortgage, executed by the former to the latter; and hence, insist that Mrs. Fox and her children, as the representatives of Samuel S., had a direct and paramount interest in the property to that amount. Whereas, the eight notes referred to by counsel, are the very notes on which the complainant recovered the judgment, and the very notes secured by the mortgage reserved by S. S. Fox, when he conveyed to James A. Fox. Doubtless Samuel S. Fox may have paid part of the purchase-money to the Pyes, from whom he purchased, or to Gibson, of whom the Pyes bought. But this fact, manifestly, could not entitle Mrs. Fox to an interest in the property, which her husband had conveyed to a bona fide purchaser for full value. And this is shown by the deed of Samuel S. Fox to James A., in which the former acknowledges to have received in cash, $41,000, as part of the purchase-money, reserving a lien upon the property to secure the payment of eight notes, for the payment of which he was bound, and which said notes, the said James A., by the same instrument assumed to pay. Hence, whether in point of fact, Mrs. Fox had or had not a claim upon the mortgaged property, it is certain that by the proof in the record, it is shown conclusively, that she had not the semblance of a title.

Mrs. Fox alleges that some days before the levy was made, she was called on by Pye, when the terms of the compromise were agreed on between them. The terms were, as above stated, in the extract from her answer. This statement, however, is not to be regarded as proof in the cause, as no evidence is adduced to prove it; and the statement is not responsive to any allegation of the bill. If we are correct, therefore, in holding that Mrs. Fox had no claim on the property, and the allegations of the bill, in regard to the terms of the compromise, alleged to have been afterwards, in Vicksburg, between Pye and Chilton, and James A. Fox, are sustained by the evidence, that far, complainant's case must be considered as made out, notwithstanding the allegation in the answer of Mrs. Fox, that Fox had no authority to act for her; Fox being the only party then legally or beneficially interested in the property as against the complainant.

Mrs. Fox disclaims any knowledge of the negotiations, alleged to have occurred between Pye, Chilton, and Fox, at Vicksburg, concerning the compromise; and denies, upon information, that any such compromise as alleged in the bill was made between these parties. Her answer, therefore, in this respect, is entitled to little, if any, weight as evidence.

Pye, Chilton, and Fox, were the witnesses examined on this point. The testimony of Pye and Chilton fully sustains the bill in reference to the terms of the compromise alleged to have been agreed on and settled at Vicksburg. The evidence of Fox is directly adverse. But, assuming that these witnesses are entitled to equal credit, the evidence of Pye and Chilton must prevail. We are bound therefore to hold that the bill, in this respect, was sustained.

Mrs. Fox, in her answer, alleges, that some days before the levy, she and Pye, at her house in Louisiana, agreed upon and settled the terms on which the suit was to be compromised; and gives the terms as set forth in the foregoing extract from her answer. But these statements are not in response to any allegation of the bill, and no evidence was adduced to prove them. Her answer in this respect is, therefore, not to be considered as evidence in the cause. In regard to the facts which transpired, after Pierce, Pye, and Fox left her house for Richmond, where the deeds were executed, not

being personally present, her answer in regard to them can have no other effect than to put the complainant upon the proof of them. And in regard to these facts, Pye and Fox are the only witnesses. And it is not to be controverted that, if Pye is to be credited, the allegations of the bill in reference thereto are sustained. On the other hand, if Fox is to be believed, the complainant must fail.

On this point, the position assumed by counsel for appellant virtually concedes away the case. For if it be true, as maintained, that the evidence of the complainant and defendant was precisely equiponderant, and hence that it is impossible for the judicial mind to determine the issue in favor of either party, it is clear that this court must affirm the decree. The position, if tenable, and the argument, if sound, might, with propriety, have been taken and addressed to the chancellor. But, in this court, it rests upon the party prosecuting an appeal or writ of error, to establish affirmatively and clearly the error alleged. Hence, the first inquiry here is not, whether the judgment or decree sought to be reversed is manifestly correct, but whether it is clearly wrong. Hence, in such a state of the case as that which counsel insist is presented here, it would be impossible for this court to determine that the decree was clearly erroneous.

But however this may be, we place a very different estimate upon the evidence.

In every instance where Pye testifies to facts (and they are numerous), of which other witnesses besides Fox were cognizant, he is fully sustained. And in many instances, where Fox swears in direct opposition to the evidence of Pye, and in reference to important and material facts, he is contradicted by the unimpeached testimony of other witnesses. We deem it unnecessary, by extracting the evidence, to show the instances in which Pye is sustained, and Fox, when he swears in reference to the same transactions, is contradicted and discredited by the other witnesses. Upon settled principles, we are bound to disregard the testimony of Fox, and to hold that Pye's evidence is entitled to full credit in determining the questions at issue. And we pass from this branch of the subject, with the remark, that in our opinion the bill was sustained by the proofs.

The agreement or contract, under which the complainant claims

the property in controversy, was neither an authentic act, nor reduced to writing, and signed by the parties sought to be charged. And for that reason, it is insisted it was a mere nullity, and vested no title in the complainant.

The property, at the date of the compromise, was situated in the State of Louisiana, the law of which declares slaves to be immovable property; and provides, that all sales of immovable property or slaves shall be made by authentic act, or under private signature; and that all verbal sales of any of these shall be null, as well for third persons as for the contracting parties themselves; and that testimonial proof of it shall not be admitted. Civil Code, Art. 461, 2415. And by another article of the Civil Code of that State it is provided, that every transfer of immovable property, or slaves, must be in writing; but if a verbal sale, or other disposition of such property be made, it shall be good against the vendor, as well as against the vendee, who confesses it, when interrogated on oath, provided actual delivery has been made of the immovable property or slaves thus sold. Id. Art. 2255.

The exposition which has been given to these provisions, by the courts of Louisiana, seems to place it beyond doubt that the contract or agreement, alleged in the bill, was not, as contended by counsel, an absolute nullity; but that such contracts would be enforced by the courts, if the party charged either admitted upon oath the execution, or failed to object to the introduction of the testimonial evidence on the trial.

In the case of *Babineau* v. *Cormier*, which grew out of the sale of land, where evidence had been introduced, in the District Court, without objection, to limit the terms of the deed, the court say, "The testimony was given in the court below without any exception to its introduction, and we feel bound to notice it." And further, that "parties have certainly a right to acknowledge a parol contract for land, and they have a right to consent that their stipulations in regard to it may be proved by parol evidence. Nor is it seen how a regard to the interests of third parties requires the rejection of such proof. They certainly cannot be affected by it; for what is done in the suit, where such testimony is admitted, is to them *res inter alios acta*." 2 Cond. S. C. Rep. Lou. 518.

And in *Strawbridge* v. *Warfield*, which completely covers the

question before us, the same doctrine was recognized. In that case, Porter, J., said : " The judge of the court of the first instance considered the verbal sale of the slave was null. But we differ with him on this point. On the provisions of our old code, the jurisprudence of this court was well settled, that parties had a right to admit a parol contract, for the sale of immovable property ; and that, if they chose, they might, as they did in this instance, admit parol evidence to prove it. The late amendments to the Louisiana Code have not changed those of the Civil Code, except in recognizing the validity of a verbal sale, and in establishing, by their authority, the doctrine, that the exclusion of parol testimony is a privilege which the parties may waive." 4 Lou. Rep. 22.

In the case before us, the evidence by which the contract, alleged in the bill, was proved, was admitted without exception by the defendants below. This, according to the established doctrine of the courts in Louisiana, they had a right to do. And having waived this privilege, it is now too late to except to its legality, and to insist that we shall disregard it.

Decree affirmed.