## H. Tully v. John A. Herrin.

1. Conflict of laws—Lex fori—Assignment governed by.—Where a party sues as assignee, the assignment under which he claims, must conform with the law of the forum.

2. PARTIES TO ACTIONS AT LAW—ASSIGNEE OF OPEN ACCOUNT.—The assignee of an open account has no title, by our laws, to sue in his own name, except the debt has been assigned to him in writing, by the creditor.

3. CONFLICT OF LAWS—PARTIES TO ACTION—SYNDIC OF LOUISIANA.—A syndic of Louisiana cannot maintain a suit at law, in his own name, as syndic, in the courts of this state, on an open account due to his insolvents, and assigned to him under the insolvent laws of Louisiana.

4. ATTACHMENT—EQUITABLE OWNER ENTITLED TO WRIT—LEGAL OWNERS MUST BE IN DECLARATION.—Any equitable owner of a chose in action is as much entitled to the writ of attachment, as he who combines both interests; but in declaring upon the cause of action, he must put upon the record, the party in whom is the legal title.

5. CIRCUIT COURT—PRACTICE—OFFICE OF A DEMURRER.—The office of a motion is to bring to the notice of the court, some matter or subject in the progress of a cause, which cannot be reached by plea or demurrer.

6. SAME—PRACTICE—OFFICE OF A DEMURRER.—If the declaration does not contain a cause of action, or if it sets out a good title defectively, the mode of submitting the question to the court, is by demurrer, not by a motion to dismiss.

7. AMENDMENTS—INJUNCTION OF THE STATUTE.—The injunction of the statute of amendments, is to reform the pleadings and proceedings, so as to bring the merits of the controversy fairly to trial.

8. ATTACHMENT BY EQUITABLE OWNER—AMENDMENT OF DECLARATION BY NAMING LEGAL OWNER.—Where an action is begun by attachment, sued out by the equitable owner of a chose in action, and the declaration is erroneously filed in his name, it may be amended by putting upon the record, the party in whom is the legal title; and this will not necessitate a change in the affidavit or bond.

9. SAME—CASE AT BAR.—T. was syndic of T. & Co., under the laws of Louisiana, and as such, held a chose in action, against H.; T. sued out an attachment in this state, against H., giving bond, and making affidavit in his own name, as syndic, etc., both affidavit and bond, reciting that the indebtedness was to T., syndic of T. & Co. The declaration in the suit was in the name of T., syndic, etc. *Held:* The declaration should have been in the name of T. & Co. *Held:* An amended declaration could be filed. *Held:* This would not necessitate a change of either affidavit or bond.

Error to the circuit court of Rankin county. TARBELL, J.

On 17th day of November, A. D. 1868, in the county of Rankin, plaintiff in error, as syndic of the insolvent firm of A. J. Tully & Co., doing business in New Orleans, La., sued out an attachment at law, founded upon a claim of said firm of A. J. Tully & Co. against defendant in error, for the sum of $1,806 94 due by open account.

Affidavit was duly made by the agent of said H. Tully, syndic, and bond given in substantial pursuance of the statute.

An attachment duly issued, which was executed by levying upon an iron safe of defendant, and by summoning various persons as garnishees.

On 17th November, 1868, an *alias* attachment issued, addressed to the sheriff of Hinds county, which he duly levied on certain lands, as the property of defendant in error, as appears by the return on said warrant of attachment.

After the levy and return, the attorneys-at-law of plaintiff in error filed in the circuit court of Rankin county their declaration in *assumpsit* on the claim for which attachment had been sued out, and proceeded to take depositions in New Orleans.

The insolvency of the firm of A. J. Tully & Co., and the appointment of plaintiff in error, as syndic, under the insolvent laws of Louisiana, is shown by a duly certified copy of the record from Louisiana.

At the February term, 1870, of Rankin circuit court, defendant in error moved the court to dismiss the whole proceedings, on the ground that the suit was brought in the name of H. Tully, as syndic of A. J. Tully, upon an open account not assigned or transferred to said H. Tully.

This motion, after argument of counsel and due consideration by the court, was sustained, the cause dismissed at the cost of the attaching creditor, and the application to amend the proceedings refused.

From this decision of the court sustaining said motion, H. Tully, the syndic aforesaid, brought the cause here by writ of error, and for error assign the following:

1st. The court erred in sustaining the motion made by defendant in error to dismiss the cause.

2d. The court erred in dismissing this suit on motion of defendant in error.

3d. The court erred in dismissing this suit on motion of defendant in error, and refusing plaintiff in error leave to amend.

4th. The court erred in refusing plaintiff in error leave to amend, and dismissing the suit on motion of defendant in error.

*W. & J. R. Yerger*, for plaintiff in error.

Three questions are presented by this record:

1st. Could the plaintiff in error maintain a suit at law, as syndic of A. J. Tulley & Co., upon an open account due to them and assigned to him as syndic under the insolvent laws of Louisiana?

2d. If he could not, could the defect in the proceedings be taken advantage of by motion to dismiss, or did it require a plea or demurrer to present the question to the consideration of the court?

3d. Considering that no action could be maintained in the name of the syndic, and that a motion to dismiss was the proper mode of taking advantage of the defect, was not the plaintiff entitled to amend?

The first question is not entirely free from embarrassment. The decisions of the courts in this country are not uniform, and there seems to be a conflict between the decisions in America and the decisions of the English and Continental European courts.

By the common law, no suit at law could be maintained in the name of an assignee of a chose in action, except the assignee of a bill of exchange or promissory note. A practice, however, grew up, of suing at law, in the name of the original payee, for the use of the assignee, who was the real owner and controlled the case. 1 Chitty's Pl., 15, 16.

This rule applies equally to assignments made by operation of law as well as voluntary assignments made by the party in all courts where the common law system of pleading prevails. To remedy the inconvenience resulting from the common law rule, the bankrupt and insolvent laws, in all the common law states, almost invariably contain an express legislative provision, authorizing assignees appointed under them to maintain actions in their own name upon contracts made with the bankrupt or insolvent. In this state a great change in the common law rule of pleading has been made by our statute law relative to suits by assignees of choses in action.

The recognition in Rev. Code, 486, art. 5, of the right of the real owner to continue the suit after the death of the nomi-

nal plaintiff in like manner as if originally brought in the name of the usee, greatly modified the strict common law. rule, which continued a cumbrous form of pleading and proceeding when every reason had ceased for continuing the rule.

But a still greater change in the common law rule was made by art. 42, ch. 61, Rev. Code, 485, giving assignees of choses in action power to sue under certain circumstances.

These modifications of the common law look to the substance, and not the form—to the thing, and not the name; and provide for the prosecution of suits in the name of the real, and not the nominal owner, and must materially change the mode of enforcing rights in courts of law in many cases where the rules were adopted in conformity to the strict rule of the common law, which originally denied validity to contracts for the sale or transfer of choses in action.

The insolvency of A. J. Tully & Co., and the appointment of H. Tully as syndic, was made in Louisiana, and by authority of the laws of that state. It is well known that the common law distinction between legal and equitable remedies, does not prevail there, but that the transfer, by operation of law, to the syndic, under the proceedings in insolvency, rests in him—the property and right to sue for and recover all property, movable and immovable, which belonged to the insolvent. This action he maintains in his own name, or by representation he stands in place of the insolvent. The title to the property itself is vested in him by operation of law.

But in the present case, the proceeding in insolvency in Louisiana was upon the voluntary application of the debtor, and the property may be truly said to have passed as well by voluntary assignment as by operation of law.

In the English courts the doctrine is manifestly maintained, that foreign bankrupt or insolvent laws have universal operation, and that an assignment under such laws transfers the movable property of the bankrupt or insolvent, in

all other countries to the same extent as a voluntary transfer made by the debtor, would transfer it, and then withdraw it from the process of the local foreign laws, by way of arrest, attachment or otherwise issued in favor of the foreign creditors in the country where the movable property is situated. Story on Conflict of Laws, § 403; 1 H. Black. R., 691, 692, 2 ib., 402, 405; 4 T. R., 182, 192; 2 Mass., 617.

This whole question is very learnedly and exhaustively discussed by Judge Story in the Conflict of Laws, and while he admits that the American courts have not uniformly adopted the rule of the English and Continental courts, it is very evident that he favors that rule as founded upon principle and justice, as well as comity. He cites, approvingly, the case of Alison v. Carnival, 1 Crompt., Mees. & Rosc., 296, in which it was held that if, by the law of the foreign country, the assignees or syndics of a foreign bankrupt may sue there, the same right to sue in England will be allowed by the comity of nations.

In the American courts it is admitted that the general rule is, that personal property, including debts, can have no locality, but follows as to its disposition and transfer, the law of the domicile of the owner. But it is said every country may, by positive law, regulates, as it pleases, the disposition of personal property found within it, and may prefer its own attaching creditors to any foreign assignee, and no other country has a right to question the determination. Story on Comfl. of Laws, 410,

Upon referring to the American cases, it will be seen that the point arising in them has been a stuggle for priority and preference between parties claiming against the bankrupt under opposing titles, the assignees claiming for the general creditors and the attaching creditors for their separate rights. Story Comfl. of Laws, 420.

In most of the American cases in which assignments under foreign bankrupt laws have been denied to give a title against attaching creditors, it has been distinctly admitted that the assignee might maintain suits in our courts under

such assignment for the property. Story on Confl. of Laws, §
420, and cases cited. ·

Judge Story further says, " unless this admission can be
overthrown, it surrenders the principle; for no one will con-
tend that the assignees can, either at law or equity, sue in
our courts, unless they possess some title under the assign-
ment."

It being conceded that a foreign assignee or syndic may sue
in our courts to recover personal property generally, the
question arises whether they can sue in their own name, in
a court of law to recover choses in action. In England and,
in this country,. the authorities seem to be contradictory
some affirming, and others denying the right. In the cases
of Wolfe v. Oxbalme, 6 Maule & Sel., 99; Jeffrey v. Buck-
taggort, 6 Maule & Sel., it was held they could not. But in
Smith v. Buchanan, 1 East., 11, Lord Kenyon, etc., preferred
a different opinion; and in Alison v. Furniss, 1 Cromp., Mees.
& Rosc., 277, Baron Porter maintained the right. In the
American courts, the decisions are contradictory, though
Judge Story says the weight of authority is against the right.
Story on Confl. of Laws, 565. In the case of O'Callahan v.
Hamond, 3 Taunton, 82, 84, it was held that the assignee of a
judgment in Ireland, where such assignment vested a title
at law, in the assignee, could maintain an action in law in
England, because a legal title by the *lex loci* vested in him,
and the case was not to be governed by the law of England
as the assignment was in Ireland. Story on Confl. of Law., 566·

It is conceded that the objection that an assignee of a
chose in action cannot maintain an action upon it in his own
name, is purely technical, and has been received in many
cases by statute, and in some instances by the courts. Thus
it has been said, if the debtor, after the assignment, promise
to pay the debt to the assignee, he may maintain a suit on
this promise and recover the contents of his choses in action.
Being the real owner of the choses in action, and the real
party in interest, is sufficient consideration to support an
action upon an express promise to pay. It is difficult to con-

ceive why, if the action could be maintained upon an express promise, it would not lie upon an implied *assumpsit*, which the law raises in every case where one party has a right to demand, and it is the duty of another to perform an obligation. But if it be conceded that by strict common law rules this action could not be maintained, it is conceived that the remedy by attachment has extended the jurisdiction of courts of law and gave authority to maintain this suit.

The remedy by attachment is statutory. It gives a remedy where the common law gave none, and is by the very terms made applicable to " all demands founded upon any indebtedness, or for the recovery of damages for the breach of any contract, express or implied." Rev. Code, 372, art. 1. It further provides that the " creditor shall make oath of the amount of his demand," etc. It is also intended, and is to be construed " for the advancement of justice and the benefit of creditors." Art. 14. Looking at this language, it would seem impossible to resist the conclusion, that the remedy by attachment is applicable to the case at bar. The claim sued upon is a demand founded upon an indebtedness. It is for the recovery of damages founded upon a breach of an implied contract, and the party who sued out the attachment is the creditor to whom the money is to be paid. He is the real owner of the claim, and the only person to whom payment could rightfully be made, or who could take the oath or give the bond required by the statute. By article 6, it is provided that, before issuing the attachment the officer " shall take bond and surety from the plaintiff, his agent or attorney." Who was to give this bond? Of course the party really owning the claim, the creditor to whom the money was to be paid; and unless the writ and bond could be taken out in his name, and he could make the affidavit, the remedy by attachment would be unavailable in this class of cases.

2d. But if mistaken in the above views, then the court erred in dismissing the proceedings by attachment, on motion. The only way of reaching the alleged defect, was by plea or demurrer, or on motion to exclude the evidence upon

the bearing. In no case could the court, upon a mere motion, dismiss the case, however irregular or deficient the pleading, if there was any state of the case in which the court could take jurisdiction of the suit, or the plaintiff could maintain the action.

3d. But in any case, the plaintiff was entitled to amend, and the court erred in refusing leave to amend. The syndic, H. Tulley, is the real plaintiff; when collected, the money would go to him; the suit is for him, and a payment to him would discharge the debt—a payment to any one else would not. A suit in the name of A. J. Tulley & Co., would have left the control and direction of the suit in H. Tully, the real party, who was responsible for costs, and an amendment of the proceedings to that effect would only have been in a formal or technical matter.

If we couple Rev. Code, 508, art. 180, on the right to amend pleadings and proceedings in general, with Rev. Code, attachment law, art. 15, and add the provisions of art. 44, declaring how the attachment law shall be construed, the right to amend seems to be beyond dispute.

*Johnston & Johnston,* for defendant in error.

Can a syndic of Louisiana, as such, maintain a suit in our Mississippi courts, in his own name, for the recovery of money due by open account to the insolvents whose estate he represents? It is an adjudicated point, in this state, that a Louisiana syndic cannot sue in our courts as syndic. Kirkland & Co. v. Lowe, Pattison & Co., 33 Miss., 423.

The law which governs as to who shall be parties to a suit, is that of the forum. Story on Confl. of Laws, §565.

The doctrine laid down in the Mississippi case, of Kirkland & Co. v. Lowe, Pattison & Co., is the same in Massachusetts and New York, and other states. Orr v. Amory, 11 Mass., 25; Raymond v. Johnson, 11 Johns., 488.

The appointment of a syndic does not debar the insolvents from suing in their own names. Blane v. Drummond, 1 Brock., 62; Raymond v. Johnson, 11 Johns., 488.

If this were an assignee in bankruptcy, suing under the law of the United States, the rule, we admit, would be different. But the suit at bar is by a syndic, appointed by the mere state laws of Louisiana.

There are many other authorities on this point, cited by Mr. Shelton, in his brief in the Kirkland case, to which we refer the court, should there be any doubt as to the correctness of the position we here assume.

In the case at bar, after the motion to dismiss was properly sustained by the court below, plaintiff's counsel asked leave to amend the declaration, which application was refused.

The general statute on the subject of amendments, is not compulsory, but merely gives to the courts discretionary power on the subject. "The court shall have power and authority," etc., etc. Rev. Code, 1857, p. 508, art. 180.

Under this discretion, the court below refused the application to amend. There is no error in that. While we admit that, under the statute above cited, this court has the power to revise the action of the court below, yet we submit, that an inspection of the whole record, shows that the amendment ought not to have been allowed, and could not, in fact, have been made, if allowed.

1st. Let us see what is meant by an " amendment." The term, in the ordinary signification is defined by Mr. Webster to be " a change for the better; correction; alteration." Bouvier makes this legal definition: " The correction, by allowance of the court, of an error committed in the progress of a cause." 1 Bouvier's Law Dic., 118.

The definition of Burrill is as follows: " To free from error or deficiency; to correct an error; to supply a deficiency; the correction of an error committed in any process, pleading or proceeding at law or in equity." 1 Burrill's Law Dic., 72. Our statute, above cited, limits the extent of amendments as to parties, to mere " mistakes in the name of any party." Revised Code, 508, art. 180.

In this case, there was no mistake in the name of H. Tully, in whose name the suit was brought. His name was

correctly set forth in the proceedings, hence no amendment was allowable under the statute. The actual mistake was this : that the attachment suit was commenced in the name of a party having no legal power to sue. It was a total misconception on the part of the attaching creditor, as to the person who should be plaintiff. And, after the fatal error, plaintiffs asked to amend by abandoning their case as brought, by creating a new suit by way of amendment, and leaving in court no trace of the cause as originally brought. To permit this would be an extension of the doctrine of amendment far beyond all the limits intended to be given by our statute.

SIMRALL, J.:

H. Tully, syndic of A. J. Tully & Co., a commercial firm at New Orleans, Louisiana, who had become insolvent, instituted this suit by attachment against Herrin.

The first question raised in this court is whether the syndic can maintain a suit at law in his own name. The syndic fulfills, under the civil law, very much the same functions of trustee under our system, upon a surrender of all his property and effects, by an insolvent for the benefit of creditors. The laws of Louisiana provide for the appointment of a syndic, in whom the property and effects rest, to be administered for the benefit of creditors. It is not questioned that the syndic may maintain actions, in respect to the property, effects and choses in action, as the insolvent might have done in the courts of Louisiana. But it is insisted, that if he sues in a court of Mississippi on a chose in action, the law in the state controls, as respects the remedy and the power of action.

Each state will recognize a right which has been acquired under the laws of another state, but reserves to itself the exclusive control over the remedy, when the right is claimed in its tribunal. The *heres factus* or *natus* in France, may directly sue and recover, in the courts of that country. But if part of the effects are in England, the forms of juris-

prudence there would require that he should clothe himself with a representative character, in order by suit to reduce the property to his possession; hence he must take out letters of administration. Whilst this is so, his ultimate right as determined by the law of France, to the enjoyment and *usufruct* of the property, is fully recognized.

1st. The right to personal property, or choses in action, are such as the owner may create or confer, or may arise by operation of. law, in the country where the proprietor confers it, or the law operates upon it. But the right of action will be regulated by the law. of the tribunal in which the suit may be brought. In Louisiana there is no distribution between the legal and equitable title. Equities which form so large a part of our jurisprudence, have no place in the civil law distinctly and separately.

The argument was advanced for the plaintiff in error, that although, at common law, this chose in action was not assignable, and courts of law would not recognize the assignee as legal owner of the debt, yet, as by the laws of Louisiana, Tully, the syndic, took all the title and interest of the insolvents, and the Rev. Code, 485, had greatly enlarged the area of assignments, the action was well brought. Art. 42, p. 485, is " the assignee of any chose in action may recover the same in his own name, if the assignment be in writing."

If A. J. Tully & Co., had made a written assignment of the open account, then the plaintiff would have been within the statute, and would have had a title to sue at law. The assignment meant by the statute, must be made by the owner of the chose in action, the party to whom the express or implied promise was made. The assignment made to H. Tully, was by the operation of the laws of Louisiana, and not by the immediate act of the parties. Comity has not been pushed to the extent, that the laws of one state may prescribe a form of action to the courts of another; or to enable a person to maintain a particular suit, on a state of facts, or character of title, when such suit could not be brought according to the rules of law which govern

the forum.   It was on such grounds that C. J. Marshall, in Beane v. Drummond, 1 Brock., declared " that a debt, which, by the laws of Virginia, is not assignable, cannot, by the laws of any other country be assigned so as to enable the assignee to sue in Virginia." In the same connection, he says, " suits must be prosecuted by virtue of the law of the country where they are instituted, and not of that where the claimant resides." This being true, the assignment as well as the nature of the debt sued for, must conform to that law.

The assignee of an open account has no title, by our laws, to sue in his own name, except the debt has been assigned to him in writing by the creditor. Any other transfer, although good by the law of the domicile, or place where made, will not invest the assignee, with the right of suit in his own name, because the mode does not conform to our law. His beneficial interest in the chose in action will be respected and enforced. But touching the remedy, he must submit to the forms and principles prescribed to the forum.

Because of these doctrines, the great weight of authority, is, that the assignee under a foreign bankrupt law, cannot sue in his own name in our courts. An asssignee under the bankrupt laws passed, from time to time, by congress, can sue, because the law, which is paramount and operative, coextensive with the United States, so authorized. The laws of foreign countries, and of the several states, have no extraterritorial force.

The very point we are considering, arose in the case of Kirkland & Co. v. Lowe, Patterson & Co., 33 Miss., 436, and was decided against the right of the syndic to bring the action. We do not agree with counsel for the plaintiff in error, that the attachment law makes any change in the forms of action, or in the character of right, with which the plaintiff must be clothed.

The " creditor," under the Rev. Code, 372, art. 2, who has a " demand," of the character described in the first article, may make the oath, give the bond, and sue out the writ. But the pleadings must be conducted according to the accustomed

usages.  H. Tully, the syndic, as beneficial owner of the
debt, was a "creditor" within the intent of the statute.
Any equitable owner of a chose in action is as much entitled
to the writ, as he who combines both interests.  But in de-
claring upon the cause of action, he must put upon the record
the party in whom is the legal title.

2d.  Ought the amendment to have been made?  The pre-
cise amendment sought to be introduced into the pleadings,
ought to be so distinctly stated as that this court can judge
of its propriety.  If that be not done, the record must clear-
ly indicate in what particular the pleading is proposed to be
changed.  The objection made to the proceedings was that
the legal title to the chose in action was in A. J. Tully & Co.
The reason assigned is in these words:  "Because the de-
claration and proceedings are at the suit of H. Tully, syndic
of A. J. Tully & Co., and predicated on an open account, not
assigned," etc., etc.  The more appropriate mode of taking
the exception would have been by demurrer to the declara-
tion, for the reason that it did not show a legal title in the
plaintiff, or by an objection to the account when offered in
evidence, because not assigned "in writing" to the plaintiff.
The office of a motion is to bring to the notice of the court
some matter or subject in the progress of a cause, which can-
not be raised by plea or demurrer.  It ought not to be per-
mitted to usurp the place of regular formal pleading, where
they are appropriate.  If the declaration does not contain a
cause of action, or if it sets out a good "title" defectively,
the appointed mode of submitting the question to the court
is by a demurrer, and not by a motion to dismiss.  In regard
to pleas, it has been more than once declared by this court,
that if they have any merits, though defective and insuffi-
cient, they cannot be displaced on motion, but must be con-
tested by demurrer.  But, passing the form in which the ob-
jection was taken, ought permission to have been given the
plaintiff to amend?  We think the record sufficiently points
to what the amendment was proposed to be.  Manifestly, it
was to obviate and ease the defect in the pleading, so as to

place on the record the party in whom was the legal title to the chose in action. The legal ownership was in A. J. Tully & Co., inasmuch as they had not assigned the open account to the plaintiff.

Within the statute of amendments could this have been done? The statute is exceedingly comprehensive, made in the interest of justice and truth, in derogation of forms, technicalities and ceremonies which oftentimes rise up as obstacles in the way, not attempting the enumeration of a long catalogue of specific amendments that may be made. The legislature uses this general language as if purposely to include any omission that might have occurred in an enumeration: "The court shall allow all amendments to be made in any pleading or proceeding at any time before verdict, so as to bring the merits of the controversy between the parties fairly to trial." Rev. Code, 508, art. 180.

It was said at the argument, to have allowed A. J. Tully & Co. to have been introduced into the pleading would have been to change the action, and make a new and different suit. The injunction of the statute is to reform the "pleadings and proceedings," so as to bring the merits of the controversy fairly to trial. What was the controversy between these parties? It was whether the defendant owed the debt, apparently due, by open account, to A. J. Tully & Co., but which debt had passed, on their insolvency, to H. Tully, their syndic. The declaration advised the defendant that such was the demand. It is not controverted that the syndic was the proper person, indeed the only person entitled to receive the money, that beneficially he owed the debt, to collect and distribute among the creditors of the insolvents. It would not be any stretch of the words of the statute, surely no infringement of its spirit and purpose, to have allowed the plaintiff to so amend his pleading in a technical matter as to enable him to recover the debt, unless the defendant could produce meritorious reasons why he should not. Among the special amendments named in the statute are these: The court may allow all mistakes in the name of

a party, or the form of the action " to be corrected." We do not suppose the statute so broad as that any mistake, or error, or misconception in the form of the action, may be " corrected." If ejectment be brought for land, it cannot be changed into debt, nor conditions be abandoned, and *assumpsit* substituted. But if *assumpsit* should be brought on a sealed instrument, it would be legitimate to change the form of the action into debt or covenant. The cause of action is the same, and the amendment would be necessary in order to bring the controversy to trial on the merits. In Weathersby v. Sinclair, 43 Miss., 189, *assumpsit* was brought by a mechanic, for work and labor, and materials used in the erection of a dwelling. We held that it was competent to so amend the pleadings as to prefer a claim for the mechanic's lien. Denton v. Stephens et al., 32 Miss. Rep., 195, in 1855 (prior to the adoption of the code), was this: suit was instituted in the name of one Fox, nominal plaintiff, for the use of Woodward. The defendants pleaded in abatement that Fox had died before the commencement of the suit. Woodward confessed the plea, but was allowed to strike out the name of Fox and insert that of Denton, his administrator. Such an amendment was said to be purely formal. It in nowise could prejudice the defendant, by depriving him of any substantial defense. We think that all the irregularities and defects in the pleadings specified in art. 181, p. 508, ought to be amended on application for that purpose, as well as those not embraced in this article, but included in the terms and spirit of the general words of the preceding art. 180.

The very point under discussion went into judgment in Montague v. King, 37 Miss., 441. The suit was begun by attachment. The plaintiff, under leave of the court, amended his declaration by inserting the name of Gaddis as nominal plaintiff, for his use. This was assigned for error. It was said by the court, that the change was authorized by art. 180 of Rev. Code, already cited; that the change in the form of the action was merely formal. King was as really the plaintiff in the amended as in the original declaration, nor was the

defendant cut off from any defense under the amendment, which he could have made as originally brought.

The amendment of the declaration, by making A. J. Tully & Co. nominal plaintiff, would not necessitate a change of either the affidavit or bond. The affidavit states the indebtedness to be to H. Tully, syndic of A. J. Tully & Co. The bond recites the fact in the same way, and that H. Tully, syndic of this firm, has sued out the attachment. The debt was really due to Tully, syndic; he being the substantial litigant, it was his duty to indemnify the debtor by giving the bond, and he alone was responsible for costs.

Judgment reversed and cause remanded, with leave to the plaintiff to file an amended declaration, and *venire facias* awarded.