234 So.2d 916 (1970)
Mansfield L. DOWNES et al.
v.
CROSBY CHEMICALS, INC., et al.
No. 45761.
Supreme Court of Mississippi.
May 4, 1970.
*917 Broom & Singley, Columbia, for appellants.
Hall, Callender & Dantin, Columbia, for appellees.
SMITH, Justice:
Mansfield L. Downes, David S. Gordon, J.D. Herrin, Rufus L. Lumpkin, Elton McCraney, Melvin West, Fred E. Lumpkin, R.H. McElhinny, Iris W. Taylor, Franklin S. Gordon, A.O. Biggs and C.R. Burge have appealed from a decree of the Chancery Court of Pearl River County adjudging appellees, R.H. Crosby and his wife, Mrs. Virginia Ethel Crosby, and Crosby Chemicals, Inc., a Mississippi corporation, to be the owners of a certain tract of land, including both banks and the bed of Hobolochitto Creek, as it traverses such tract, cancelling the claims of appellants with respect thereto and permanently enjoining them from trespassing or entering upon the same.
Appellees, R.H. Crosby and his wife, Mrs. Virginia Ethel Crosby, and Crosby Chemicals, Inc., were complainants in five bills of complaint of similar import, language and purpose, the bills together having brought in all of the appellants as defendants. By agreement the cases were consolidated and tried as one.
Complainants in their bills sought cancellation of all claims of the defendants to any right, title or interest in or to the tract of land described in the bill. It was alleged that complainants were the "sole, true, legal and equitable" owners of such land by purchase and conveyance, having acquired title thereto in 1937 by deed from Lamont Rowlands and his wife, Mrs. Josephine Goodyear Rowlands. A deraignment of their record title was attached to the bill. Complainants charged further that they were at the time of filing suit, and had been since 1937, "in the full, open, adverse, obvious, notorious, uninterrupted and continuous possession and occupancy of all of said property." The bill further stated that said tract had been enclosed for many years by a "cyclone fence" and "legally posted against all trespassing." It was charged that none of the defendants had any right, title or interest in the land but were contending that "they had the right to enter upon said property at will." That appellants had, on specified dates, made unlawful entries thereon, and were asserting the right to make further entries thereon, that such claims of right were *918 spurious and without foundation but nevertheless cast a doubt, cloud or suspicion upon complainants' title which they were entitled to have cancelled. The bills contained a further prayer that such defendants be permanently enjoined from asserting such false claims and from further trespassing upon complainants' property.
The defendants, appellants here, in their answer as finally amended, after denying most of the material allegations of the bill, admitted that they were "asserting certain rights and privileges in and to that certain stream known as Hobolochitto Creek which may traverse said property including the right to enter upon said stream without permits or consent of complainants." A further claim, asserted in a cross-bill filed by appellants, went out when it was developed that it was based upon a mistaken premise as to the location of a certain dam. And while in their amended answer appellants had denied it, during the course of the trial it was stipulated that "on the dates and at the times set out in the bills of complaint, the defendants entered upon Hobolochitto Creek by use of boats * * * and that said entries so made by defendants were made under claim of right."
Upon the trial, the evidence showed that following their purchase of the land in 1937, Mr. and Mrs. Crosby had moved upon it and had since made it their home, had reared their children there, and that their dwelling was situated only 90 feet from the south bank of Hobolochitto Creek.
In addition to the fact that the uncontradicted evidence showed that Mr. and Mrs. Crosby had lived upon the land since 1937, it was shown that it had been kept closed to the public and posted against trespassing all these years, that it was enclosed by an ordinary wire fence until 1954, when this fence had been replaced with an 8 foot cyclone fence. Moreover, personnel employed by the Crosbys patrolled the land against trespassing. Taxes upon the land were also paid by the Crosbys. It was made abundantly clear that appellants had no rights with respect thereto, except such, if any, as were held by the general public.
At the conclusion of the trial, after hearing a great deal of testimony, the chancellor found that appellees owned the property, Hobolochitto Creek was not a navigable stream, appellants had no right, title or interest therein, their claim of right should be cancelled as a cloud upon appellants' title, and that appellants should be permanently enjoined from trespassing further upon the property. A decree was entered accordingly.
While not expressly conceded, it is obvious that the "right" sought to be asserted by appellants to enter the Crosby land against the will of its owners is a right they claim to share with the general public and is based upon a contention that Hobolochitto Creek is a navigable stream. In appellants' brief the issue is stated thus:
The issue is whether or not the appellants have a right to go by boats upon the waters of Hobolochitto Creek so long as they do not touch the banks or bed of the stream. This issue involves the question of whether or not said stream is navigable or public waters by reason of either of Sections 686, 8413, 8414, or 5956-01 through 5956-376 of the Mississippi Code of 1942 as amended, or by reason of its usage in years gone by.
It is also implicit in the arguments advanced by counsel for the respective parties that the fundamental issue turns upon whether or not the chancellor was manifestly wrong in his finding that Hobolochitto Creek was not a navigable stream to which appellants, as members of the general public, were entitled to enter upon at will.
We have examined each of the statutes cited by the appellants in their statement of the issue. We are unable to agree that all are relevant.
*919 Mississippi Code 1942 Annotated section 8413 (1956) is as follows:
All bays, inlets, and rivers, and such of the lakes, bayous, and other watercourses as shall have been, or may be, declared to be navigable by act of the legislature or by the board of supervisors of the county in which the same may be, shall be public highways. (Emphasis added).
Neither the Legislature nor the Board of Supervisors of Pearl River County has declared Hobolochitto Creek to be navigable.
The following section, section 8414, provides:
All rivers, creeks and bayous in this state, twenty-five miles in length, that have sufficient depth and width of water for thirty consecutive days in the year, for floating a steamboat with carrying capacity of two hundred bales of cotton, are hereby declared to be navigable waters of this state.
It will be observed that section 8414 provides several factors to be considered in determining what streams shall be "navigable waters." To be "navigable waters" under the statute a stream must be at least 25 miles in length, and it must have sufficient depth and width of water for 30 consecutive days in the year for floating a steam boat with a carrying capacity of 200 bales of cotton. We cannot agree with appellants' contention that these criteria are unconstitutionally vague or incapable of exact definition or application. It is apparent that it was the legislative intent to exclude small private creeks and streams, non-navigable in fact, and to declare navigable only streams actually capable of being navigated by substantial commercial traffic.
The reverse of the proposition, that is to say, that the legislature may take for public use private streams or streams not navigable in fact by general statutory enactment, without constitutional compensation, has been questioned.
In 65 C.J.S. Navigable Waters § 7b (1966) it is stated:
Statutes declaring that certain streams are navigable are given recognition as far as they do not do violence to the fact, but a legislative act cannot impress the character of navigability on a stream that is in fact not navigable and thus destroy the vested rights of riparian owners, * * *.
Generally, statutes relating to navigability are given effect in accordance with their terms, and statutes declaring that certain streams are navigable are given recognition as far as they do not do violence to the fact. * * *
* * * * * *
Such statutes, however, do not convert nonnavigable streams into navigable waters, and a legislative act cannot impress the character of navigability on a stream that is in fact not navigable and thus destroy the vested rights which riparian owners have in a nonnavigable stream, * * *.
While several collateral issues are now raised by appellants the controlling issue, and the issue submitted to the chancellor, was whether or not Hobolochitto Creek was a navigable stream. Upon this depended any right of the appellants to enter upon that portion of it encompassed within the boundaries of appellees' lands against the will of appellees.
In 56 Am.Jur. Waters section 177 (1947) it is stated:
It has been stated that the division of waters into navigable and non-navigable is merely another way of classifying them as public or private, and that navigable waters embrace all bodies of water which are public in their nature.
To the same effect is the following statement from 65 C.J.S. Navigable Waters § 1 (1966).
The term `public waters' is ordinarily synonymous in a legal sense with `navigable *920 waters,' as distinguished from `private waters,' the term used to designate nonnavigable waters, and it has been stated that a division of watercourses into navigable and non-navigable is merely a method of dividing them into public and private, which is the more natural classification.
The latter quotation appears both in the brief of appellees and that of appellants.
In Culley v. Pearl River Industrial Commission, 234 Miss. 788, 812, 108 So.2d 390, 398 (1959) it was held that one claiming that a stream is navigable has the burden of proving that fact by evidence. The Court said:
Moreover, appellants offered no evidence to show that the Pearl River is a navigable water-way within the definition of Code Secs. 686 and 8414. The burden of establishing that fact was upon the appellants, and they failed to meet it. 65 C.J.S. Navigable Waters § 9.
In the present case, a great deal of evidence was submitted on the question of the navigability in fact of Hobolochitto Creek. It included testimony of both lay and expert witnesses, and many photographs of the stream itself were introduced.
This evidence, and including the photographs, showed that Hobolochitto Creek was a small stream, which followed a tortuous course across appellees' lands, there was relatively little water in it except in various pools and holes and in times of excessive rainfall, it was wadable at many points, while numerous sandbars, jams of fallen timber and drifts formed obstructions throughout its course. Its length was approximately 9 miles.
No commercial or other traffic had ever used it as a "water highway" and no boats had been upon it other than those which might be classified as canoes, skiffs or light fishing boats, except that, around the turn of the century only, logs sometimes had been floated down it.
In an early case, Smith v. Fonda, 64 Miss. 551, 554, 1 So. 757, 758 (1887) this Court said:
If, for a considerable period of the year, its usual and habitual condition is such that the public may rely upon it as a safe and convenient means of transporting over it the logs which are cut from the forest on its banks; if this condition recurs with the season of our usual rains, and continues through it, even though occasionally interrupted by a decline of its waters,  it is a navigable stream. On the other hand, even though at irregular and uncertain intervals throughout the year, regardless of seasons, it is so swollen by rains that it is temporarily useful for purposes of transportation, it is not a navigable or floatable stream in such sense as to entitle the public to an easement over its waters. (Emphasis added).
The briefs of both appellants and appellees contain extensive quotations from treatises and texts on navigable waters, and particularly as they appear in Corpus Juris Secundum and American Jurisprudence. From these it is apparent that there has been no unanimity among the authorities or the writers upon the subject in this country.
There may be discerned, however, from the multiplied quotations in the briefs, a definite thread of agreement that seems to run through them to the effect that navigability is determined upon the basis of the stream's character and capability in "its natural state" or "its natural condition." Both of the quoted phrases are taken from citations contained in appellants' brief.
In the case now before us, the chancellor had before him ample believable evidence that Hobolochitto Creek is not a navigable stream in fact, within any accepted definition of that term, and certainly that it did not fall within the definition of navigable streams adopted by the Mississippi Legislature as expressed in two *921 identical sections of Mississippi Code 1942 Annotated, (sections 686 and 8414). The testimony supporting this view is further confirmed by clear photographs appearing in the record. The chancellor's finding seems to be supported by the evidence, and certainly it is impossible to say that he was manifestly wrong in finding that Hobolochitto Creek was not a navigable stream. Griffith, Mississippi Chancery Practice section 674 (2d ed. 1950); Fox v. Matthews, 33 Miss. 433 (1857); Rose v. Jones, 118 Miss. 494, 78 So. 771 (1918); Powell v. Tomlinson, 129 Miss. 658, 92 So. 583 (1922); Hamrick v. Cook, 40 So.2d 267 (Miss. 1949).
Finally, appellants now raise two questions on the pleadings. They say that the deraignment of appellees' record title, attached to appellees' bill, was defective, and (2) the allegations of the bill relied upon to support appellees' claim of adverse possession since 1937 were insufficient.
Appellees' bill contained a deraignment of their record title. Neither the adequacy nor accuracy of this title deraignment was challenged by special demurrer in the trial court. These were questions which must have been so raised in the trial court. Griffith, Mississippi Chancery Practice sections 294-97 (2d ed. 1950). Since the alleged defects were not brought to the attention of the trial court by special demurrer, they cannot now be raised, since the trial court was given no opportunity to rule upon them. Moreover, if a special demurrer had been filed, upon this ground, pointing out defects in the deraignment of title, and had been sustained, appellees would have been entitled to an opportunity to amend, upon such reasonable terms as the court might impose, in order to obviate such defects.
Nor can appellants be heard to complain now that the allegations of the bill were insufficient to support proof of acts of adverse possession in view of the failure to interpose an objection at the trial upon that ground to the introduction of evidence clearly establishing that appellees, under color of title (their deed from the Rowlands) in fact actually had been in the actual adverse possession of the land since 1937. An objection, based upon the ground that proof of acts reflecting the adverse character of appellees' possession was outside the scope of the allegations of the bill, was indispensable in order to preserve the question on appeal. Not only was no opportunity given the trial court to rule upon it, but under the liberal Mississippi amendment statute, if an objection had been made to the introduction of evidence of adverse possession upon the ground that it was outside the scope of the bill, because of the failure of the criticized language used in the bill to charge adverse possession properly, and this objection had been found to be well taken and had been sustained, appellees would have been entitled to an opportunity to amend their bill to conform to the proof.
The right of private ownership of property is a fundamental distinction between the democratic and communistic forms of government. The land in question is the home of Mr. and Mrs. Crosby. There they have lived since 1937. They have reared their children to maturity in a home situated 90 feet from a bank of Hobolochitto Creek. They expect to spend their declining years in this home. Appellants assert no special right but sought by willful entry upon the Crosby property to test the right of its owners to exclude them. In bringing suit, and invoking the aid of the court, the Crosbys properly submitted the issue to the judicial process for determination. Was Hobolochitto Creek "navigable waters," and thus a "public" stream, upon which members of the general public, as a matter of right, might enter at will, without regard to the wishes of the owners of the land through which it flowed? If so, picnicking, boating, swimming, fishing and other activities might be engaged in upon the creek by any and all who cared to do so, within 90 feet of the doorstep of the Crosby home, at any time of day or night.
*922 In Smith v. Fonda, supra, the Court held that, on conflicting evidence, the question of whether or not a stream is or is not navigable is a factual one and is for the determination of the trier of facts, in that case the jury.
Upon the evidence adduced, the chancellor decided that Hobolochitto Creek was not "navigable waters"; and therefore was not a public stream to which appellants were entitled to access at will over the objection of the Crosbys who owned both banks and the bed of the stream. This was a factual question which lay peculiarly within the province of the chancellor as trier of facts. There was sufficient evidence to support this finding, and we cannot say that he was manifestly wrong.
We find no reversible error, and the decree must be and is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY and PATTERSON, JJ., concur.