## M. LOWENBURG & CO. *v.* E. P. JONES, AGENT.

1. COMMON CARRIER. *Connecting lines. Suit for freight. Recoupment for loss of article.*
   The value of an article lost by a prior connecting common carrier cannot be recouped, in a suit by the last carrier against the consignee, for the freight-bill for carrying several articles, including the lost one.

2. CHOSE IN ACTION. *Assignment. Suit by assignee. Usee.*
   The equitable holder of a chose in action, to whom no written assignment has been made, must sue in the name of the legal owner thereof.

ERROR to the Circuit Court of Warren County.

Hon. T. C. CATCHINGS, Special Judge, by agreement of the parties ; Hon. U. M. Young being disqualified.

The case is stated in the opinion of the court.

*T. M. Miller* and *M. Marshall,* for the plaintiffs in error, filed a brief, but it cannot be found by the clerk of the court ; and although notified of its loss, and requested to furnish the reporter a statement of the points made and authorities cited by them, they have failed to do so.

*W. L. Nugent,* for the defendant in error.

1. The bill of lading, or contract of affreightment, in this case, is not in the record. The Vicksburg and Meridian Railroad Company was only liable, therefore, for losses happening along its route ; and it being shown that all the mules received by it were safely transported to Vicksburg and delivered to the consignees, the false claim of the plaintiffs in error for the recoupment was properly disallowed. *Garside* v. *Tr. & M. Nav. Co.,* 4 Term Rep. 581 ; *Ackley* v. *Kellogg,* 8 Cow. 223.

2. The defendant in error delivered the mules without exacting prepayment of the freight charges thereon, and was

compelled to pay the same to the railway company. The plaintiffs in error, consequently, owe him the sum so paid; and while it is true that there was no assignment of the claim, still the suit was brought, without any pleadings, in the magistrate's court, and the judgment ought to be upheld. The record shows that the proceedings were conducted in the name of the company for Jones's use, at one time, and that, in the Circuit Court, an amendment was made substituting Jones himself as plaintiff; but on whose motion, or why, we cannot discover. If the presumption can be indulged that this amendment was made on the motion of the plaintiffs in error, they ought not here be allowed to complain of an error brought about by themselves.

*M. Marshall*, in reply.

Lowenburg & Co. could not be made liable by Jones's payment of the freight-bill.

An act done for another, without his request, is a voluntary courtesy, for which no action can be sustained. *Force* v. *Haines*, 17 N. J. L. 387; *Stokes* v. *Lewis*, 1 Tenn. 20; *Jenkins* v. *Tucker*, 1 H. Black. 90; *Potter* v. *Potter*, 1 Pen. 415; *Dunbar* v. *Williams*, 10 Johns. 249; *Evarts* v. *Allen*, 12 Johns. 352.

SIMRALL, C. J., delivered the opinion of the court.

The question on which the case seems to have turned, in the court below, was, whether the defendants could not recoup in this action the value of the mule, against the demand for freight asserted against them.

The facts are these: Lowenburg & Co. shipped at St. Louis twenty-three mules, consigned to themselves at Vicksburg, "on a through bill of lading." The animals were received by the Iron Mountain Road at St. Louis, and were transported over two connecting railroads, the last being the Vicksburg and Meridian Road. The agent of the latter road delivered twenty-two mules to the owners, stating that one had escaped from the car at Canton, and when found would be delivered. The delivery

was made by the agent, without payment of freight, that being postponed until some inquiry and adjustment could be made in respect to the missing mule. Afterwards a mule was tendered to Lowenburg & Co., which they declined to take, because not the one that was lost. It was proved that one of Lowenburg & Co.'s mules, in consequence of the breakage of the end of the car, escaped near Canton, but not on the line of the Vicksburg and Meridian Road. The Vicksburg and Meridian Road held Jones, its agent, responsible for the freight-bill, and deducted its amount from his salary.

There was no proof of the terms of the contract with the first carrier. The bill of lading, or the receipt given to the shippers, was not produced on the trial.

The contract with the Iron Mountain Railroad Company may have imposed the duty on that company to safely carry and deliver at the point of destination. If such were its terms, then that company assumed responsibility for the connecting lines, which were its agents, no matter on what line the loss happened. It may be that the terms of the affreightment were such that each carrier was only bound to carry the property safely to the terminus of its line, and then deliver to the next, and so on, until the ultimate destination was reached. If that were its character, then each is responsible for its own default or miscarriage, causing loss or damage. It is well settled that a natural person, being a common carrier, may engage to carry goods beyond the terminus of his line, and thus make connecting carriers his agents. Story on Bail., sect. 558; Smith's Merc. Law, 367; Pars. on Merc. Law, 217; *Perkins* v. *Portland, etc., R. Co.*, 47 Me. 588.

By the great weight of authority, the same principle is applicable to a railroad company.

In England, by repeated decisions, the rule has been settled that if a railroad company receives goods " marked for delivery" at a place beyond the terminus of its own line, it undertakes, *primâ facie*, to transport and deliver safely at the place of destination, and would be liable for loss or damage occur-

ring on a connecting line.   The company is under its common-law responsibility as carrier, for *the whole route*, unless by special contract it is limited.   *Muschamp* v. *Railway Co.*, 8 Mee. & W. 421 ; *Crouch* v. *Railway Co.*, 25 Eng. Law & Eq. 287.  And the action must be brought against the first carrier. Authorities cited.

Under the English rule, the receiving carrier will be presumed to have made arrangements with the other lines which affect it with liability.   *Watson* v. *Railway Co.*, 3 Eng. Law & Eq. 497 ; 7 Exch. 699 ; 16 Eng. Law & Eq. 531.

A less rigorous rule has secured the sanction of most of the American courts.   The principle of the later cases is, that the bare receipt of goods marked for delivery beyond the carrier's line does not, in the absence of a special contract, impose on the receiving carrier a liability for the connecting lines.   He has performed his duty by safe carriage to the end of his line and prompt delivery to the next connecting carrier, and so on, until the property has been transported to the place of ultimate delivery.   Each carrier is under the common-law responsibility, so long as he has a duty to perform as carrier.

But the usage of the business of the receiving carrier, its conduct, and dealings may be such that a contract may be implied that it takes the risk for the whole route.   Pars. on Merc. Law, 217, 218, note 3 ; 2 Pars. on Con. 217, and cases cited in note.

If connecting carriers continue the transit, under a special agreement made by the first with the shipper, then each is liable to the owner of the goods, according to the agreement. *Meagher* v. *C. & A. R. Co.*, 44 N. Y. 520, 521.   Also 45 N. Y. 529 ; *Green* v. *Clark*, 2 Kern. 342 ; *Sanderson* v. *Lamberton*, 6 Binn. 127 ; 2 Greenl. on Ev. 210, and note.

The English rule, that if a shipper makes a special contract with the first carrier to safely carry and deliver to the ultimate point, the action must be against him, and will not lie against an intermediate or connecting carrier by whose default

loss ensues, has not met with judicial approval in this country. Under such a contract, the receiving carrier would undoubtedly be liable, although the fault was with the connecting carrier; so, also, would be the carrier on whose line the default and loss occurred.

If, by the contract, the Iron Mountain Railroad Company engaged to be responsible for the transit of the mules over the whole route, it could be held for a loss on any part of the line beyond its terminus. So the connecting carrier would be liable also, if the loss could be traced to it. *Green* v. *Clark*, 12 N. Y. 346; *Dawes* v. *Peck*, 8 Term Rep. 330; *Burnet* v. *Lynch*, 5 Barn. & Cress. 589; *Sanderson* v. *Lamberton*, 6 Binn. 129; *New Jersey Steamer Co.* v. *Merchants' Bank*, 6 How. (U. S.) 344.

The English courts remit the owner to a remedy against the receiving carrier, on the idea that there is no privity of contract between the connecting carrier and the shipper or owner. The American courts sustain the action against the connecting carrier guilty of the tort, on the better reason that the shipper or owner adopts the act of the first carrier in passing the property to the second, so that the second becomes bailee of the owner. The first carrier becomes the agent of the owner in contracting with the second; and by bringing the suit against the second, the owner confirms or ratifies the act.

The shipper of property by railroad, to a place of delivery which can only be reached by transit over connecting lines, must be presumed to assent to the transfer by the first bailee to the second, and so on to the ultimate destination; and that in each transfer there is set up with the carrier the relation of bailee to the general owner, with the responsibilities incident to the bailment. Such is the course of business, and such is the rule of law applicable to it in this country.

Applying these principles to the case before us, it is manifest that the defendants below could not recoup the value of the lost mule against a proper demand of the Vicksburg and Meridian Railroad Company, or its assignee, of the freight.

A sufficient answer to that claim is, that the Vicksburg and Meridian Railroad Company delivered to Lowenburg & Co. all the property which it received from the connecting carrier, and there was no effort to show that a loss happened by its default or negligence. The conclusion of his honor, the special judge who tried the case (without a jury), was correct on this defence.

The suit having been originally brought before a justice of the peace, there are no formal pleadings. The plaintiffs in error insist in this court, as they may have done in the Circuit Court, that this suit cannot be maintained by Jones. The record is confused on the point whether the suit was begun and prosecuted by the Vicksburg and Meridian Railroad Company or by Jones. In the style of the case in the transcript, sometimes the railroad company, and sometimes Jones, seems to be the plaintiff. The summons is in the name of Jones, agent for the company. In the final disposition of the case, rendering judgment, Jones is named as plaintiff. In the petition for the writ of error, and in the bond, he is described as the plaintiff. Counsel, in their arguments, have so considered him. No criticism or question has been made, on the record, of the character suggested by counsel.

The only additional facts necessary to be stated are, that the Vicksburg and Meridian Railroad Company held Jones responsible for the freight, and deducted the amount from his salary. Jones claims that by reason of that, and the other facts put in evidence, Lowenburg & Co. became indebted to him. There is no assignment, in writing, of the freight-bill by the Vicksburg and Meridian Railroad Company to him.

The object of sect. 670 of the Code was to enlarge the assignability of choses in action, so as to confer on the transferee a legal title, and give him recognition in a court of law. But, that the assignee may have that "right," the transfer must be in "writing," or the contingency named in the section must exist. The common law is, to a certain extent, repealed. If the assignment is not made in the manner prescribed, the

---

---

statute does not apply, and the remedies of the assignee are such as the common law affords. Plainly, the statute embraces choses in action of the character of that here sued upon.

If the company had delivered the account for freight to Jones (without more), intending thereby to assign the debt to him, he could not sue in his own name, because at common law such transfer did not pass a legal title. He would have acquired an equitable right to the money, and to the use of the company's name to sue for it.

The deduction of the freight-bill from Jones's salary, for his failure or omission to collect it, could only entitle him to collect it for his own use on one of these grounds: some by-law or regulation of the corporation, or the course of dealing between it and its agents, or the doctrine of substitution. Upon whatever footing it may be placed, it would set up no privity of contract between Lowenburg & Co. and himself. In any aspect of it, he would be subrogated to the rights of the corporation. A right having that foundation, and not embraced in the statute, is a mere equitable claim, insufficient,. according to the rules and practice of courts of law, to sustain an action.

On the return of the case into the Circuit Court, the Vicksburg and Meridian Railroad Company may be substituted as the plaintiff, for Jones, usee.

Judgment reversed and cause remanded.