Anaconda Aluminum Company *v.* Sharp

No. 42116          January 15, 1962          136 So. 2d 585

10

*Henley, Jones & Henley,* Jackson, for appellant.

*William A. Bacon, Donald E. Mullen,* Jackson, for appellee.

RODGERS, J.

The appellee brought an attachment suit in the Chancery Court of Hinds County against Frank J. Byrnes, a nonresident of Mississippi who is domiciled in Dallas, Texas, and who does business under the trade name of "Lone Star Display Company". Process was had upon the defendant by nonresident publication. The jurisdiction of the court was established by a garnishment in

the attachment suit against a resident debtor, to-wit, "The Downtown Jackson Association, Inc." and a garnishment was served upon the Town of Prentiss, a Mississippi municipality.

The appellee alleged that the defendant Frank J. Byrnes was indebted to the complainant Chester T. Sharp in the sum of $8,965.91, which represents commissions due to Mr. Sharp as salesman for the Lone Star Display Company of Christmas decorations to various customers, including the Downtown Jackson Association and the Town of Prentiss. The complainant alleged that the Downtown Jackson Association, Inc., had purchased Christmas decorations but that it still owed the non-resident defendant for this purchase. It was also claimed that the Town of Prentiss owed $645 to the defendant Frank J. Byrnes. Before this case could be tried the Anaconda Aluminum Company obtained permission to file an intervenor, in which it alleged that it was a non-resident corporation domiciled in Kentucky, and that the account due from the Downtown Jackson Association, Inc., hereinafter called the Association, to Frank J. Byrnes had been transferred and assigned to the Anaconda Aluminum Company, hereinafter called the intervenor.

The Association filed its answer to the bill of complaint and admitted that it owed to the defendant Frank J. Byrnes the sum of $5,756.37 and offered to pay this sum into court.

The complainant Chester T. Sharp then filed a motion asking the court to require the intervenor to marshall assets. In this motion the complainant Sharp alleged that before the date shown in the written assignment of the account due by the Association to defendant Byrnes, to-wit, June 27, 1960, defendant Byrnes had verbally assigned the Association's account to the complainant Sharp. The intervenor denied there was an assignment to the complainant Sharp and denied that

it was required to marshall assets. A decree pro confesso was taken against the defendant Frank J. Byrnes for the amount alleged to be due to the complainant and a decree pro confesso was taken against the Town of Prentiss for the sum due from the Town of Prentiss to Frank J. Byrnes. Thereupon the Town of Prentiss paid into court the sum of $625.

The case was then tried and the Chancellor reserved his ruling on the motion to marshall assets, and also reserved his ruling to the objection of the intervenor to the testimony offered by the complainant Sharp that on June 27, 1960, the Association's account was verbally assigned to complainant, on the ground of "election of remedies". The case was tried on the pleadings and the testimony introduced and after the trial the chancellor rendered an opinion in which he concluded that: (1) The defendant Frank J. Byrnes, who is doing business under the trade name of Lone Star Display Company, was indebted to the complainant Chester T. Sharp in the sum of $8,956.91 plus accrued interest; (2) that the complainant should recover from the Town of Prentiss the money due to the defendant Frank J. Byrnes and paid into court by the Town of Prentiss; (3) that the assignment from defendant Byrnes to complainant Sharp of the account due by the Association was a good and valid assignment; (4) that the objection to the testimony with reference to the assignment to Byrnes on the ground of a failure to elect one of two actions should be overruled; (5) that the verbal assignment from defendant Byrnes to complainant Sharp on June 27, 1960, was a lien superior to the lien of the assignment from the defendant Byrnes to the appellant Anaconda Aluminum Company, dated August 2, 1960; and (6) that the complainant Sharp would be permitted to draw the funds paid into court by the Association and the Town of Prentiss upon depositing proper bond.

The Appellant Anaconda Aluminum Company insists upon appeal that the Chancery Court was in error in holding the verbal assignment from Byrnes to appellee Sharp was superior to the assignment to the appellant because no notice was given to the Association after the verbal assignment was made and because the complainant Sharp was barred from pleading the verbal assignment by the doctrine of "election of remedies" and could not introduce evidence on his alleged claim of a verbal assignment since under the common law he could not file inconsistent pleas. The appellant's claim that the verbal assignment was invalid is based upon the opinion of the Chancellor in which he said that he took all of the conversations together in reaching his conclusion that there was an assignment, and that thereafter no notice was given to the Association of such an assignment.

The testimony in this case shows that Frank J. Byrnes is the owner of a company that manufacturers Christmas displays and operates under the name of Lone Star Display Company. Mr. Byrnes employed Chester T. Sharp as a salesman to sell his product to towns and associations desirous of displaying municipal Christmas decorations, and that he became indebted to Mr. Sharp in the sum of $8,965.91 for commissions on sales made by Mr. Sharp. It appears from the evidence that Mr. Byrnes came to Jackson, Mississippi, on the 27th day of June 1960 to talk to the representatives of the Downtown Jackson Association, and to Mr. Sharp. Prior to his visit, on April 6, 1960, the attorney for Mr. Sharp had written to Mr. Lester Wren, the manager for the Downtown Jackson Association, advising him of an agreement between Mr. Sharp and Mr. Byrnes in which it was understood that the check from the Association would be made payable to Mr. Byrnes and Mr. Sharp jointly. At the time that Mr. Byrnes came to Jackson, Mr. Lester Wren, in the presence of Mr. Sharp, asked

Mr. Byrnes about the letter he had from the attorney and asked him if it were satisfactory for this account to be paid over to Mr. Sharp. After the business was concluded in the office of Mr. Vaughn Watkins, the attorney for Mr. Sharp went with Mr. Sharp and Mr. Byrnes down in the elevator to the lobby of the bank, and while there asked Mr. Byrnes if he assigned the Association account to Mr. Sharp and was advised that he did.

The Chancellor held that these two conversations perfected the verbal assignment. It is the law in this state, and has been for many years, that an assignment of an account can be made verbally. Pass v. McRae, 36 Miss. 143; Shell Petroleum Co. v. Yandell, 172 Miss. 55, 158 So. 787; Tully v. Herring, 44 Miss. 626; Hutchinson v. Simon, 57 Miss. 628; Ashby v. Carr, 40 Miss. 64. Although there is authority to the contrary, our Mississippi Court has planted itself firmly upon the proposition that where there are several parties claiming property in the hands of a third party by virtue of an assignment, the assignee who first brings notice to the attention of the debtor has a prior right, and his lien is superior to assignees who later present assignments.

It is a general rule ''Where a fund has been set apart for the payment of an obligation or class of obligations, or a fund in the hands of a third person has been so designated as to require the latter to make payment out of it to a creditor, the general rule seems to be that the person for whose benefit the fund was so set apart or designated acquires a right to have it applied as directed, which right will be given a preference over the rights of other creditors in case of the debtor's insolvency; provided, of course, that no element of fraud or other superior equity enters into the transaction.'' 32 A. L. R. page 951.

The Law of Equitable Assignment is a difficult Rule to understand as was pointed out in 32 A. L. R., p. 955: "In this connection it has also been said: 'A learned judge has said that the law of equitable assignments is brought to such an exquisite degree of refinement that it is by no means easy to understand it. * * *The refinement appears in this, that, while an agreement to pay out of a fund is on the border line, it is held, both in England and the United States, that any order or assignment, oral or written, to pay out of a particular fund, made upon the debtor or holder of the fund, or an agreement to give such an order or a mere oral direction to go and receive the money and pay such and such debts with it, does operate as an equitable assignment.' "

It is apparent to us that the Chancellor had sufficient testimony on which to base his judgment that there was a verbal assignment from Frank J. Byrnes to Chester T. Sharp in the office of Mr. Vaughn Watkins on the 27th day of June 1960. The letter to Mr. Wren gave him notice that Mr. Sharp had a claim to the funds due by the Association.

The appellant suggests that the appellee has "completely shifted his position in said brief from the position of appellee at the time of the trial of this case", because "the appellee is now for the first time attempting to allege that the letter of April 6, 1960, was some type of notice". It is apparent to us, however, that this is not a change in the position of the appellee for the reason that the Chancellor evidently took into consideration the testimony, wherein Mr. Lester Wren, the manager of the Downtown Jackson Association brought to the attention of Mr. Byrnes the fact that he had gotten a letter advising him that the check was to be made out to Sharp and Byrnes, and Mr. Byrnes understood this and agreed to it. The fact that he later told the attorney for Mr. Sharp that he intended to turn the account over

to Sharp simply corroborates the understanding he had discussed in the office of Mr. Watkins.

We are of the opinion that the Chancellor had ample evidence on which to base his opinion that the debtor had notice of the assignment on the date of his visit to the office of Mr. Watkins.

The second major issue submitted for determination on appeal is the application of the doctrine of election of remedies. The Anaconda Aluminum Company argues that Chester T. Sharp had no right to claim a verbal equitable assignment, because such an assignment was a claim to the title of the funds due by the Association, and is in conflict with the cause of action brought in the Chancery Court based on a suit in attachment, in which it was admitted that the title to the funds were in the nonresident defendant.

The doctrine of election of remedies is an ancient common-law doctrine and is said to be defined as: ''Election is simply what the term imports — a choice shown by an overt act between two or more inconsistent rights either of which may be asserted at the will of the chooser alone. An election of remedies may be defined as the choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same state of facts. The doctrine is applicable where an aggrieved party has two remedies by which he may enforce inconsistent rights growing out of the same transaction and, being cognizant of his legal rights and of such facts as will enable him to make an intelligent choice, brings his action by one of the methods.'' 18 Am. Jur., Election of Remedies, p. 129, par. 3. It is pointed out by the same text writer in the following paragraph 4 that: ''The doctrine of election, of Roman origin, is but an application of the maxim that 'he who seeks equity must do equity' and that a person shall not be twice vexed for one and the same cause — the doctrine

has come naturally and properly to be regarded as an application of the law of estoppel.''

Mississippi has been slow to accept the doctrine of election of remedies as was pointed out in the case of Murphy v. Hutchinson, 93 Miss. 643, 48 So. 178, as follows: ''We are fully aware of the fact that our own Court has been slow to give effect to the doctrine, elsewhere widely accepted, that a person with an unredressed grievance, and with two inconsistent courses open to him, will be held to have finally abandoned one of these courses merely because he has entered upon another. The doctrine, so far as Mississippi is concerned, has been carefully limited and guarded. Perhaps the fullest consideration of the question to be found in our Reports is found in the opinion of Judge Campbell in response to the suggestion of error in Madden v. Louisville, etc. R. Co., 66 Miss. 258, 8 South. 181. This opinion, while distinctly stating that while the doctrine of election is sound, and is to be recognized and applied by our courts in proper cases, yet it must not be applied when the party sought to be bound by the election acts without full knowledge of his legal rights as determined by the application of correct principles of law to a state of facts of which he has full knowledge.''

It has been pointed out by the text writer that ''the doctrine of election of remedies is applicable only where there are two or more coexistant remedies available to the litigant at the time of election which are repugnant and inconsistent.'' See 18 Am. Jur., Election of Remedies, p. 134 par. 11. From the same text, Section 16, we are told to conclude an election of remedies, a suitor must not only have a choice of two or more elective remedies inconsistent in character but he must also actually select one of them.

The appellant has cited the case of Forest Lumber Co. v. Lightsey, 136 Miss. 625, 101 So. 689, as authority for his contention that the appellee Sharp could not

introduce testimony on his claim that there was an equitable assignment made to him by the creditor Byrnes. This case was an attachment suit brought in the justice of the peace court, and on appeal to the Circuit Court the plaintiff in the action suit attempted to set up an equitable assignment as a defense against a legal assignment of a claimant, and the court said: "There was no effort to change the proceedings from an attachment to replevin, if it were permissible to make such amendment, which we do not decide. The plaintiff having elected to proceed on the theory that the defendant Hutto was a debtor of the plaintiff, and that Hutto was the owner of the property attached * * * is bound by such election, and could not proceed against Hutto, so as to set up an entirely different theory."

██ █ The Forest Lumber Company case is a good example of the rigidity of the rules of procedure in a common law court, and although there is authority that an equitable assignment may be pleaded in a law court, in defense of a suit, (Ashby v. Carr, 40 Miss. 64), nevertheless a suit can not be brought in a common law court by an equitable assignee in his own name. See Tully v. Herrin, 44 Miss. 626; Ashby v. Carr, supra; Lowenburg & Co. v. Jones, 56 Miss. 688. Section 1448, Code of 1942, giving the right to an assignee to sue in his own name, when the assignment is in writing, came into existence originally because suit could not be maintained in the name of an equitable assignee. This Court has said: "In the absence of a statute otherwise providing, a suit in a court of law on a chose in action, the legal title to which is in one person and the equitable title in another, must be brought in the name of the legal owner for the use of the equitable owner; but such is not the practice in a court of equity, for the equitable owner, if a proper party in such a suit, may be joined as such in his own right." Cottrell v. Smith, 146 Miss. 837, 112 So. 465.

██ █ As a general rule, where a suit is brought for the

recovery of property the holder of the legal title to the property sought to be reached should be made a defendant to the bill. Ross-Mehan Brake Shoe Co. v. Pascagoula Ice Co., 72 Miss. 608, 18 So. 364.

It has been pointed out by the text writer: "The selection of one of two or more co-existing, inconsistent remedies is not irrevokable, unless made with knowledge or means of knowledge of the facts out of which his right arises. Thus if a litigant commences a suit, action or proceeding in ignorance of the substantial facts which offer an alternate remedy, he may when informed adopt a different remedy. 18 Am. Jur., Election of Remedies, 145, Par. 22.

In the case, of Securities Investment Co. v. Armstrong, 168 Tenn. 462, 79 S. W. 2d 570, where an automobile repairman by proceeding by attachment to enforce his lien for repairs on a car did not elect his remedy so as to preclude him from asserting his common-law artizan's lien to defeat a subsequent suit to replevy the car, brought by an investment company which held an unsatisfied conditional sales contract, retaining title thereto when it clearly appeared that he had never heard that the conditional sales contract was in existence, until service upon him of the writ of replevin. He had a right to set up his superior lien in defense of the suit, although he had admitted title in the owner in the attachment suit.

██ █ Finally — in order to defend upon the ground that the complainant is estopped from proceeding in an action after having elected an inconsistent remedy,—on the election of remedies doctrine—it is necessary to plead the doctrine in order to bring it to the attention of the court. See 18 Am. Jur., Election of Remedies, p. 168, par. 53; Griffith's Mississippi Chancery Practice, Section 505. In this case no objection was made to the pleading filed by the complainant, and the defense could not be brought to the court's attention by objection to

the evidence, because it was an affirmative issue in the case, and should have been pleaded. See the cases cited in the notes, 18 Am. Jur., Election of Remedies, p. 168, Sec. 53.

■■ ■ The nonresident creditor in this case held the legal title to the funds due him by the Downtown Jackson Association, Inc., and it was necessary to make him a party defendant in the Chancery Court. The prior dated equitable assignment was properly set up as a defense against the legal assignment filed by the intervenor in the equity court, because at the time the action was brought the complainant could only file a suit in Chancery Court of this state by attaching a resident debtor. Tully v. Herrin, supra. The Chancery Court having obtained jurisdiction of the matter could determine whether or not an equitable assignment was prior in time and superior to a written legal assignment filed by an intervenor who claimed the proceeds of the funds attached belonging to the defendant in the attachment suit.

We therefore hold that the Chancellor had sufficient testimony on which to base his decree and opinion that Frank J. Byrnes made a verbal equitable assignment to Chester T. Sharp, and that proper notice was given to the debtor Downtown Jackson Association, Inc., so that the equitable assignment of Chester T. Sharp was prior in time and superior to the claim of the assignee Anaconda Aluminum Company.

In view of the above opinion the motion to marshall assets has become moot, and the decree of the Chancery Court is hereby affirmed.

Affirmed.

*Lee, P. J.,* and *Arrington, McElroy* and *Jones, JJ.,* concur.