In the Matter of NATIONAL SHOES, INC., trading as "National Shoes", "Mary Jane Shoes", "Delton's", "A. S. Beck", "Grandstand", "Joffrey" and "Crosby", Debtor.

**Bankruptcy No. 80–B–12136.**

United States Bankruptcy Court, S. D. New York.

April 26, 1982.

Leinwand, Maron, Hendler & Krause, New York City, for debtor; Robert Leinwand, New York City, of counsel.

Bruce H. Roswick, New York City, for Landlords.

Gelberg & Abrahms, New York City, for Creditors' Committee; Burton S. Weston, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

This dispute between National Shoes, Inc. (National or debtor), a debtor under Chapter 11 of the 1978 Bankruptcy Code since December 11, 1980, and two of its landlords, primarily involves the reach of Section 365 of that statute, 11 U.S.C. § 365 (Supp. IV 1980), which treats executory contracts and unexpired leases in bankruptcy.[1]

The dispute is bottomed on the desire of the debtor, "in the best interest of the estate", to assume several unexpired leases in stores from which the debtor operated or operates. In each instance, the landlord opposes the debtor's attempt to so deal with these leases and has filed objections to what the debtor hopes to achieve.

The debtor seeks leave to assume the leases pertaining to two of its outlets—Store No. 560 in the Burlington Mall in Burlington, Massachusetts; and Store No. 87 on Steinway Street in Astoria, New York City.[2]

As the facts and therefore the application of Section 365 relevant to these two leases are different, they are examined and disposed of separately. The lease for the premises in Astoria, New York (Store No. 87) was executed on December 31, 1968 between the debtor, as tenant, and Cranes Neck Realty Co., Inc., as landlord.

The Astoria premises differ from most of the other premises used by the debtor in that this location is a free standing building, not part of a shopping center, and the debtor was the original named lessee. Accordingly, the court need do no more than assess the impact of Section 365 on these operative facts.

Section 365(a) permits a trustee or, under Section 1107, the Chapter 11 debtor in possession, to assume or reject any of the debtor's executory contracts or leases if the court so authorizes. If assumption is sought, the right is not unfettered and certain conditions must be met. Section 365(b) insists that if there had been a default by

---

1. The numbering of sections of the Code, Pub.L. 95–598, 92 Stat. 2549–2657, U.S.Code Cong. & Admin.News 1978, p. 5787, is the same as in Title 11, United States Code. See Section 101 of the Code.

2. Resistance to the debtor's efforts to deal with two other leases has been withdrawn.

the debtor, certain assurances be given the landlord as a condition of assumption. Section 365(b)(1) provides that where there had been a default, the debtor in possession, prior to assumption, had to cure the default (or assure its prompt curing), pay for any damage which has resulted from the default (or assure such payment), and provide for adequate assurance of future performance under the lease.

The debtor's landlord rests its objection to the assumption of the Astoria lease on the claim that it is entitled to be compensated for its pecuniary loss resulting from the "debtor's breach of its covenant to maximize sales" in addition to the actual arrears under the lease. While it is true that the debtor does have the obligation to cure prepetition defaults by prompt payment or by giving assurances of prompt payment, and to provide adequate assurance for future performance as to its lease, Section 365 goes only that far. The debtor's enterprise at the site will not be disrupted and its Chapter 11 impaired because the landlord would like another tenant, or more from the debtor than the lease provides.

The lease gives the landlord additional percentage rents only if the debtor's sales exceed the agreed upon amount. If the sales of the debtor fall short of the agreed amount, the landlord receives the base rent provided for by the lease. There is neither a warranty nor a guarantee in the lease that the debtor will, in fact, exceed the stated amount of sales. Indeed, surely the debtor would have been delighted had its sales reached the point at which its landlord could look beyond the reserved rent.

 As there is no covenant by the debtor to exceed the specified sales figure which would yield payment of a percentage to the landlord, and as it appears also that the base rent was a true reflection of the rental value for the store, and as the landlord could not show that the debtor did not do its best at the site, the landlord is not entitled to recover any compensation for the debtor's inability to reach the amount contracted to ensure the landlord a "percentage rate". *Rowe v. Great Atlantic & Pacific Tea Co., Inc.*, 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d 566 (1978). As the court is otherwise satisfied that all the conditions of Section 365(b)(1) have been met, the objection to assumption of the lease on Store No. 87 is overruled.

The facts relevant to the lease on Store No. 560 in Burlington, Massachusetts, are more complex. That lease was executed on August 30, 1978 between Bellwether Properties, L. P., the landlord, and Louis Joy Corp. (Louis Joy),[3] the tenant. The debtor here is involved with this lease, it says, as assignee pursuant to a December 8, 1980 assignment by Louis Joy. The landlord insists, on the other hand, that the debtor has no interest in the lease, and that, in any event, the lease had been terminated. The issue thus raised by these polarized positions is whether on December 8, 1980 Louis Joy had anything it could assign, and if so, whether the assignment to the debtor was valid.

The landlord wisely eschews the contention available under the now-repealed 1898 Act that the filing of the debtor's petition in this court achieved a termination of the Louis Joy lease without more.[4] In doing so, the landlord accepts, as he must, the policy of the 1978 Code denouncing ipso facto or bankruptcy termination clauses. Section 365(e)(1), House Report 95–595, 95th Cong., 1st Sess. 348 (1977); Senate Report 95–989, 95th Cong., 2d Sess. 59 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. In doing so, the landlord also accepts, as he must, the policy of the 1978 Code nullifying a default that is a breach of a provision in a lease relating to the filing of a bankruptcy petition. Section 365(b)(2); House Report, *supra*, at 347; Senate Report, *supra*, at 58.

---

3. Louis Joy Corp. is a wholly owned subsidiary of the debtor.

4. Section 70b of the 1898 Act, 11 U.S.C. § 110(b) (1976 ed.), in relevant part, said that "... an express covenant that ... the bankruptcy of a ... party thereto ... shall terminate the lease or give the other party an election to terminate the same is enforceable".

It therefore follows that the landlord's position that the debtor cannot assume the lease on the Burlington, Massachusetts premises, Store No. 560, must rest on a base other than the filing of the Chapter 11 petition. That base is the termination notice sent to Louis Joy on or about Christmas Eve 1980 alleging the latter's failure to pay the December, 1980 rent on time.

It is true that as of December 8th the rent was unpaid. However, mere arrearage alone does not necessarily constitute a ground for termination. The terms of the lease must be consulted for the mechanics governing a valid termination. However, as this point was not pressed by the landlord, one can only observe that if there were a valid termination, this court is empowered, under these facts, to avoid its harsh consequences.

At the beginning of December, 1980, much was happening to the debtor which was of dominating importance in its future and in the fortunes of its creditors. Under these circumstances, to treat the eight day delay without any concomitant injury to the landlord would achieve a forfeiture of a valuable asset and give the landlord a windfall, both repugnant to the ambience of Chapter 11 from a debtor's and its creditors vantage points. See, *In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir. 1975); *Queens Blvd. Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974).

Accordingly, the court addresses the assignment of the Louis Joy lease to the debtor on December 8th. On that day, the debtor, pursuant to a written assignment,[5] became the assignee of all of the Louis Joy assets, including its leasehold interests in consideration for the assumption by the debtor of all the Louis Joy debts and liabilities. This writing, styled an Assignment and Assumption Agreement,[6] was executed on December 8, 1980, and was signed by Sherman Baker for the assignor, and by Alan J. Went, for the assignee.

The lease between the landlord and Louis Joy afforded the latter, as tenant, the right to assign the lease to another party, including a parent company, without obtaining the prior consent of the landlord or giving it prior notification. While it is true that the lease contains a provision that the net worth of the tenant's assignee had to be at least as much as that of the tenant, the evidence clearly shows that the only assets that Louis Joy had were its leasehold interests. On the other hand, the debtor's assets exceeded $50 million while its liabilities totalled some $31 million. The debtor's net worth, therefore, was far greater than the net worth of its assignor.

Regarding the form of the Assignment and Assumption Agreement here, and in the absence of a controlling statute mandating specific form or terms of art, the court notes that the manifestation of the intention required for an assignment need not necessarily be in writing at all. *Anaconda Aluminum Co. v. Sharp*, 243 Miss. 9, 136 So.2d 585, Annot. 99 A.L.R.2d 1307 (1962); *Restatement (Second) of Contracts*, Section 156, Comment a. Here, however, there was a writing, however simple and brief, sufficient to effect an assignment. The court holds, therefore, that the December 8, 1980 assignment of lease was valid. The landlord's late December, 1980 notice of termination sent to Louis Joy was therefore ineffective to charge the assignee of a valid assignment achieved weeks before.

While the landlord is entitled to adequate assurance mandated by Section 365 of the Code, it nowhere pressed that the debtor, on assumption, could not satisfy the statute. With respect to the landlord's contention that it is entitled to be compensated for its loss resulting from the debtor's alleged breach of the covenant to maximize sales, the discussion already addressed as to the Astoria lease also applies here.

Accordingly, the debtor's motion to assume the unexpired leases on Store No. 87 and on Store No. 560 is granted, and the

---

**5.** See transcript of May 29, 1981, at p. 104.

**6.** Twenty one wholly owned subsidiaries of National were assignors under this agreement.

landlord's objections to said assumption are overruled. Submit an order.