**Merilyn BUTCHER, Plaintiff,**

v.

**CESSNA AIRCRAFT COMPANY, Defendant.**

**Martha J. NOBLE, Plaintiff,**

v.

**CESSNA AIRCRAFT COMPANY, Defendant.**

**Carolyn S. DURBIN, Plaintiff,**

v.

**CESSNA AIRCRAFT COMPANY, Defendant.**

**Civ. A. Nos. S85–0456(R), S85–0510(R) and S86–0602(G).**

United States District Court, S.D. Mississippi, S.D.

Sept. 9, 1987.

---

Wayne E. Ferrell, Ferrell & Hubbard, Jackson, Miss., for Merilyn Butcher.

David C. Frazier, Pascagoula, Miss., and James G. McIntyre, Jackson, Miss., for Martha J. Noble.

John V. Woodfield, Gulfport, Miss., for Carolyn S. Durbin.

Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for Cessna Aircraft Co.

## JOINT MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge (Nos. S85–0456(R) and S85–0510(R)).

WALTER J. GEX, III, District Judge (No. S86–0602(G)).

This matter is presently before these Courts on separate motions for summary judgment filed by the defendant, Cessna Aircraft Company, against the plaintiffs, Merilyn Butcher, Martha Noble and Carolyn Durbin. The defendant alleges that as a result of the allegations made in prior state court lawsuits and a subsequent settlement based on those allegations, the plaintiffs have selected their remedy and are therefore estopped from pursuing the present actions against it. For the reasons more fully set forth herein, we are of the opinion that the motions for summary judgment should be granted.

### FACTS

On June 19, 1982, a 1979 Model Cessna R182 airplane crashed at the end of the runway at Gulf Park Airport in Ocean Springs, Mississippi. There were three people occupying the airplane, Lee Roy Butcher, who was positioned in the left front seat, Ronald Wayne Durbin, who was positioned in the right front seat, and Evarist Noble, who was positioned in the rear bench seat. All of the passengers were killed. The airplane was owned by Janet Green and operated on a lease back to Gulf Park Aviation, Inc. The stock of Gulf Park Aviation, Inc. was owned jointly by Durbin and Noble.

The only known eyewitness to the accident was Robin R. Reinke. Mr. Reinke gave a statement to the National Transportation Safety Board and later testified in a deposition that he saw the airplane begin its roll down the runway, retract its gear while barely airborne, lower its nose a bit to fly at a level altitude down the runway to gain airspeed, and pull up into a steep climb combined with a roll to the left when the plane reached the end of the runway. He stated that he saw the airplane crash into trees at a 50° nose-low altitude in a 45°

to 50° bank while the airplane was attempting to pull out of the roll. Mr. Reinke further testified that the engine was developing full take-off power at the time of the take-off, and that the engine was running smooth as silk.

## HISTORY OF THE CASE

### A. Prior Litigation

Presently before United States District Judge Dan M. Russell, Jr. are two separate motions for summary judgment in two separate suits, Civil Action Nos. S85–0456(R) and S85–0510(R). The actions consist of virtually identical legal and factual disputes. A third suit, Civil Action No. S86–0602(G), currently before United States District Judge Walter J. Gex, III, is also factually and legally similar to the above referenced actions and also has pending a motion for summary judgment. For the purpose of judicial clarity and succinctness, this Opinion has been jointly authored by Judge Gex and Judge Russell and will analyze and decide the propriety of the summary judgment motions with respect to all three of the above referenced cases.

Martha J. Noble, the widow and Executrix of the Estate of Evarist L. Noble, was the first to file suit. On November 18, 1982, she commenced an action in the Circuit Court of Jackson County, Mississippi against Gulf Park Aviation, Inc., Merilyn W. Butcher, as Executrix of the Estate of Lee R. Butcher, deceased, and Carolyn Sue Durbin, as Executrix of the Estate of Ronald Wayne Durbin, deceased. In this action, filed on November 18, 1982, and assigned Cause Number 12,124, Mrs. Noble alleged that her husband died while riding as a passenger in an airplane that was negligently flown by either Lee Roy Butcher or Ronald Wayne Durbin. In addition, she alleged that Gulf Park Aviation, Inc. failed to exercise proper care and caused, allowed, and permitted the airplane to suddenly and violently crash to the ground. She also alleged that Gulf Park Aviation, Inc. "negligently and carelessly managed, maintained, operated, and controlled its aircraft and equipment."

Merilyn W. Butcher filed suit on September 22, 1983, in the Circuit Court of Jackson County, Mississippi against Gulf Park Aviation, Inc., Carolyn Sue Durbin, as Executrix of the Estate of Ronald Wayne Durbin, deceased, and Janet Green. This case was assigned Cause Number 83–5334. Mrs. Butcher alleged that Ronald Wayne Durbin was the actual pilot of the airplane and caused the crash because of careless and reckless operation and negligence. The causes of action stated against Gulf Park Aviation, Inc. and Janet Green were for their vicarious liability as the operator and owner, respectively, of the airplane. In addition, Gulf Park Aviation, Inc. was alleged to have been the employer of Ronald Durbin and, for that reason, liable under the doctrine of respondeat superior.

Carolyn Sue Durbin, the widow and Executrix of the Estate of Ronald Wayne Durbin, was the last to file suit. She filed a complaint in the Circuit Court of Jackson County, Mississippi on February 8, 1984 against Merilyn W. Butcher, as Executrix of the Estate of Lee Roy Butcher, deceased, Gulf Park Aviation, Inc. and Janet Green. In her complaint she alleged that Lee Roy Butcher was actually piloting the airplane and that he negligently executed a roll to the left upon take-off, causing the crash. Gulf Park Aviation, Inc. and Janet Green were charged with failing to properly maintain the airplane and failing to warn the pilot "of the dangerous condition and propensity of the airplane."

As the three suits progressed on the docket of the Circuit Court of Jackson County, Mississippi, a motion for consolidation was filed by Merilyn W. Butcher requesting that her lawsuit be consolidated with the suit brought by Martha J. Noble. In support of the motion, an affidavit was filed on January 20, 1984, which recited in part that "both of the above causes [Cause Number 83–5334 and Cause Number 12,-124] arise out of the same aircraft accident which occurred on or about June 19, 1982, at the airport in Ocean Springs, Jackson County, Mississippi, in which the decedents of both plaintiffs were killed. Further, both actions allege, at least in part, that Ronald Wayne Durbin, deceased, was the

pilot in command and the pilot at the controls of the involved aircraft, that he was negligent, and that his negligence caused the deaths of the decedents of both plaintiffs."

All three cases were ultimately consolidated for all purposes by an order entered by the Circuit Court of Jackson County, Mississippi on March 5, 1984.

On March 14, 1983, Ideal Mutual Insurance Company, the insurance carrier for Gulf Park Aviation, Inc., filed a complaint for a Declaratory Judgment on the issue of coverage against Gulf Park Aviation, Inc., Martha J. Noble, Individually and as Executrix of the Estate of Evarist L. Noble, deceased, Carolyn Sue Durbin, Individually and as Executrix of the Estate of Ronald Wayne Durbin, deceased, Merilyn W. Butcher, Individually and as Executrix of the Estate of Lee Roy Butcher, deceased, Janet F. Green and Ocean Springs State Bank, a division of Pascagoula-Moss Point Bank. This action was assigned Civil Action Number S83–0252(N) in the United States District Court for the Southern District of Mississippi, Southern Division. Thereafter, the plaintiffs settled their respective wrongful death claims against the defendant Gulf Park Aviation, Inc. The total settlement was for $225,000.00 which was divided equally among the plaintiffs. A consolidation order of dismissal without prejudice was entered upon announcement and by agreement of the parties in all three cases on October 23, 1984. Civil Action No. S83–0252(N) was dismissed without prejudice on April 8, 1985.

B. Present Litigation

On April 10, 1985, Merilyn Butcher commenced her present action against Cessna Aircraft Company (Cessna). Thereafter, on April 22, 1985, Martha Noble filed suit against Cessna. Carolyn Durbin followed, and on May 5, 1985, she filed suit against Cessna.

Each of the complaints allege that Butcher was the pilot actually manipulating the controls at the time of the crash and that the crash occurred because the seat he was occupying slipped back on its tracks, rendering him unable to reach the controls and maintain full control of the airplane.

Pursuant to Cessna's motions, the issue presented to this Court is whether the plaintiffs, who have alleged in prior litigation that their decedents were killed in an airplane accident caused by reasons other than a manufacturing and design defect in the airplane and who made a recovery by way of settlement as a result of the allegations made in the earlier lawsuit, may now change their direction and claim what they earlier alleged to be true no longer true and that the design and/or manufacturing defects in the airplane manufactured by Cessna caused the accident and resulting deaths.

The plaintiffs respond by arguing that there is no denial of the earlier allegations in that there is nothing inconsistent with the position that Cessna negligently designed and manufactured the seat and/or is strictly liable for the defective design of the seat which either proximately caused or contributed to the crash.

## ELECTION OF REMEDIES AND/OR JUDICIAL ESTOPPEL

Cessna bases its motions for summary judgment upon the doctrines of judicial estoppel and election of remedies and in support thereof relies heavily on *Coral Drilling, Inc. v. Bishop*, 260 So.2d 463 (Miss. 1972), *cert. denied* 409 U.S. 1007, 93 S.Ct. 438, 34 L.Ed.2d 300 (1972), and *O'Briant v. Hull*, 208 So.2d 784 (Miss.1968). In *O'Briant*, the Court determined that when a litigant adopts facts necessary to recover in one suit, he waives the right to assert opposite and repugnant facts necessary to maintain a second suit. In *O'Briant*, the plaintiff first commenced litigation in federal court on the allegation that she was the designated beneficiary of a life insurance policy purchased by her deceased son. The dispute was resolved by stipulation in which the plaintiff recovered one-half of the face value of the insurance policy. Thereafter, the plaintiff commenced an action in Mississippi Chancery Court which alleged that the guardians of her son, a non compos mentis, had a legal duty to see

that the beneficiary of the insurance policy was changed to name either the plaintiff or her son's estate upon the son's divorce, and that this entitled her to recover $5,000.00 from the guardians. The chancellor dismissed the suit after finding that:

It is true that the complainant has proceeded in two distinct causes of action arising out of separate and distinct facts, however, the difficulty here is one action alleges what the other action denies, and the facts necessary to support one remedy is inconsistent with those necessary to support the other.

208 So.2d at 786–87.

The Supreme Court affirmed, stating:

The complainant had the choice of pursuing the remedy afforded to her as the alleged beneficiary in the policy or to prosecute a suit against the guardians for their failing to have the beneficiary changed to the complainant or to the insured's estate. Either cause of action was open to her, but not both causes. Complainant chose to pursue the legal route afforded her as the beneficiary of the policy and this was pursued to compromise and settlement. Complainant is bound by this election and cannot now proceed against the guardians.

208 So.2d at 787.

In *Coral Drilling*, the plaintiff, Bishop, initially sued Smith and Coral in Circuit Court, alleging that one of Smith's large, red trucks, while furthering the business of Coral, struck a wire that was connected to a pole on which he was working, causing him to fall and sustain injuries. Bishop asserted in sworn Answers to Interrogatories that the truck that struck the wire and caused his injury was a large, red truck. Coral was dismissed from the suit. Smith, who operated a fleet of large, red trucks, decided that Bishop's allegations had enough merit to offer $90,000.00 in settlement. Bishop accepted Smith's offer, received the sum of $90,000.00 from Smith, and caused his case to be dismissed by a judgment which recited that Smith denied liability but had paid $90,000.00 in recognition of the severity and permanent nature of Bishop's injuries.

Thereafter, Bishop commenced an action in Chancery Court against Coral in which he alleged and testified that the truck that caused his injury was blue and had a sign on the side that stated "Coral". All of the trucks that Coral operated were painted blue. Coral claimed that Bishop was precluded from prosecuting the suit against it because Bishop had elected his remedies by suing Smith and claiming that a red truck struck the wire. The trial court in this attachment in Chancery action allowed the suit to go to trial. A judgment for $350,-000.00 reduced by the $90,000.00 recovered from Smith, was entered in Bishop's favor. Coral appealed, and the Mississippi Supreme Court reversed and rendered, holding that:

We hold that because Bishop prosecuted the suit against Smith to the extent of reaching a settlement based on the contention that a Smith truck caused his injuries, he was thereafter precluded from suing Coral for the same damages based on the contention that a Coral truck caused his injuries.

260 So.2d at 466.

The Supreme Court explained that:

The two remedies Bishop sought to pursue are totally inconsistent; either a Smith truck struck the wire or a Coral truck struck it. 'The compromise and settlement of a suit constitutes such an election as will preclude plaintiff from thereafter prosecuting an action based upon a theory inconsistent with that on which the former action was maintained.' (208 So.2d at 787). Courts will not permit litigants solemnly to affirm that a given state of facts exists from which they are entitled to a particular relief, and then afterwards affirm, or assume, that a contrary state of facts exists from which they are entitled to inconsistent relief.

260 So.2d at 465–66.

It is the position of Cessna that consistent with *Coral Drilling* and *O'Briant*, the plaintiffs are necessarily denying what they earlier alleged to be true: that Merilyn Butcher no longer alleges negligence by Durbin and/or Gulf Park Aviation, Inc.;

that Martha Noble no longer alleges negligence by either Durbin or Butcher and/or Gulf Park Aviation, Inc.; and that Carolyn Durbin no longer alleges negligence by Butcher and/or Gulf Park Aviation, Inc.

The present litigation argues that Butcher was the pilot manipulating the controls, that he was not negligent and that the sole and proximate cause of the accident was the alleged defectively manufactured and/or designed seat which slipped during take-off.

The plaintiffs counter this argument by asserting that the present actions are based on negligence and/or strict products liability. The plaintiffs assert that there is nothing inconsistent with the position that Cessna negligently designed and manufactured the seat and/or is strictly liable for the defective design of the seat which either proximately caused or contributed to the crash. Presently, it is the contention of the plaintiffs that negligent control and maintenance of the aircraft is immaterial if the design defect of the seat proximately caused or contributed to the crash.

The plaintiffs contend that in *Coral Drilling* there was only one instrumentality which caused the accident (either a red truck or a blue truck) and as a result thereof, there was no possibility of any joint negligence or combined negligence. The plaintiffs allege that joint tort-feasors are jointly and severally liable and may be proceeded against, either singularly or jointly, individually or collectively. *Junkins v. Brown*, 238 Miss. 142, 117 So.2d 712 (1960). The plaintiffs suggest that a more closely analogous situation to the instant action is *Banes v. Thompson*, 352 So.2d 812 (Miss.1977). In *Banes*, the plaintiff, a passenger in a vehicle being driven by her grandfather, brought suit against Thompson, the operator of a vehicle which collided with the vehicle in which she was riding. The action was based on negligence. The case was originally tried to verdict against Thompson but the court granted a new trial. Pending the second trial, the plaintiff amended her complaint to sue both her grandfather, Banes, and Thompson for negligence. The court held

that the doctrine of election of remedies applied only where a party elects to pursue one of two inconsistent remedies open for assertion of a right arising from the same set of facts. The court stated:

> In the present case, there are no inconsistent remedies available to or claimed by appellant for assertion of her rights. She sought to recover damages for personal injuries based on theories of negligence in both actions, and particularly so after Thompson charged in his first answer that Banes was guilty of negligence which was the sole proximate cause of the collision and testified to facts in support of that charge.

352 So.2d at 815.

The primary determination required of this Court is whether or not the plaintiffs are attempting to establish an inconsistent or different cause of action arising out of the same occurrence. This Court must evaluate whether or not the plaintiffs are contradicting in the present action what was successfully alleged to be the truth in the prior litigation:

> When the estoppel is asserted in one judicial proceeding on the basis of a position taken in a prior proceeding, the labels are often blurred. There are cases in which the doctrine of collateral estoppel has been applied that seem more easily explained on the basis of the preclusion doctrine. And there are cases in which the preclusion doctrine is characterized as a branch of equitable estoppel. Many cases, however, have recognized that independent of res judicata, collateral estoppel, or equitable estoppel traditionally conceived, a litigant is not completely free to argue whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change. As it has been put in a number of cases, one may not play 'fast and losse' with the judicial process.

1B *Moore's Federal Practice,* ¶ 0.405[8] p. 239–40 (1984).

## CONCLUSION

■ The plaintiff, Merilyn Butcher, through her complaint in the state court,

alleged that Durbin was flying the airplane. More precisely, she alleged that Durbin, who had equal access to a fully functioning set of controls, intentionally performed an alleged illegal aerobatic maneuver in a negligent manner, which negligence, along with a lack of engine power as a result of the negligence of Gulf Park Aviation, Inc., combined to cause the crash.

The plaintiff, Martha Noble, in her state court lawsuit, alleged in the alternative that either Butcher or Durbin was piloting the airplane at the time of the crash. Although the plaintiff did not state precisely who was piloting the plane, she did allege that whoever was manipulating the controls of the plane, intentionally performed an alleged illegal aerobatic maneuver in a negligent manner. Noble further alleged negligence against Gulf Park Aviation, Inc. for essentially the same reasons as Butcher.

The plaintiff, Carolyn Durbin, at all times contended that the accident occurred as a result of the negligence of Butcher and included an allegation of negligence against Gulf Park Aviation, Inc., similar to Butcher and Noble.

Needless to say, we are extremely concerned with the disparity between the allegations made in state court and federal court. It is our impression that the key to deciding the present motions is to determine what effect the state court allegations of negligence on the part of the pilot and Gulf Park Aviation, Inc. have on the federal court allegations of negligence and/or strict liability against Cessna for an alleged manufacturing and/or design defect.

In each federal court complaint the plaintiffs fail to relate to us that in fact there were previous allegations of negligence or that there was a settlement based on those allegations.

Merilyn Butcher and Martha Noble now allege conclusively that the pilot was Lee Roy Butcher and that he was flying in a lawful and proper manner. Must we now assume that there was never any negligence on the part of the pilot or Gulf Park Aviation, Inc. as earlier alleged? Carolyn Durbin also conclusively states that Lee Roy Butcher was the pilot, and although her complaint fails to use the language "lawful and proper manner" when describing the actions of the pilot, she does not relate to us any of the earlier allegations of negligence against the pilot or Gulf Park Aviation, Inc.

Do the plaintiffs now consider Cessna to be solely responsible for the accident? If so, do they plan to repay Ideal Mutual Insurance Company the settlement obtained as a result of those allegations. As we will soon conclude, the plaintiffs cannot have it both ways.

It is evident that at no time did any of the plaintiffs allege anything but negligence in the state court actions. With the guidance of *Coral Drilling* and *O'Briant,* this Court must first determine if an adequate election of remedies has been made. In the state court actions, all of the plaintiffs individually compromised and settled their respective lawsuits against the defendant, Gulf Park Aviation, Inc., by and through its insurance carrier, Ideal Mutual Insurance Company. Such a compromise and settlement has been determined to be sufficient to give rise to the election of remedies analysis. *Coral Drilling,* 260 So.2d at 463.

Continuing, we must next consider if one action alleges what the other denies and whether the facts necessary to support one remedy are inconsistent with those necessary to support the other. *O'Briant,* 208 So.2d at 787. Because the present suits fail to incorporate the once alleged negligence of the pilot, now set forth as being Butcher, and because the present actions fail to make reference to the previously alleged negligence of Gulf Park Aviation, Inc., we are of the opinion that there is a current denial of negligence on the part of any of the defendants to the prior actions. This clearly is an inconsistency when one considers that the allegations now are directed solely at Cessna. We must then ask, is this the type of inconsistency which necessarily requires the denial of previously alleged facts as contemplated by the authorities?

Relating the course of events in the instant actions to *Coral Drilling*, Cessna contends that the plaintiffs alleged a single-accident—the impact of an airplane with the ground resulting in a single set of damages—the alleged wrongful deaths of their husbands. Cessna further argues that the plaintiffs' first allegations, that the accident occurred because of the negligence of the pilot and the improper maintenance of the airplane, was the "red truck". Cessna contends that those allegations which resulted in separate settlements preclude the plaintiffs from asserting that the "blue truck", the slippage of Butcher's seat when Butcher was flying the plane, caused the accident and damage, for which they have already recovered.

We are of the opinion that Cessna's reliance and interpretation of *Coral Drilling* is well founded. The present actions, not unlike the subsequent suit in *Coral Drilling*, attempt to allege inconsistent facts which necessarily deny the facts earlier plead and on which a settlement was obtained. It is our opinion that either the accident occurred because of the negligence of the pilot and/or the negligence of Gulf Park Aviation, Inc. or because the seat in which the pilot was riding defectively slipped back so as to make the pilot lose control. The facts are such that either the accident occurred one way or the other. To allege in the present actions negligence and/or strict liability in tort against Cessna is to deny the negligence earlier alleged and settled upon.

We are of the opinion that the plaintiffs' reliance in the cited case law is not supportive to their position. In *Banes*, election of remedies and judicial estoppel were not applicable, first, because the initial suit against Thompson had not been reduced to judgment or settlement, and second, because the plaintiff did not change her assertions of fact between trials. It is our opinion that had the plaintiff in *Banes* alleged that the accident happened one way in the first lawsuit and thereafter obtained recovery by way of judgment or settlement, and then attempted to make a recovery against a different party, on the basis of different facts, the case would be consistent with the instant action. Had such occurred, there is no doubt that the doctrines of election of remedies and judicial estoppel would have been applied to bar the plaintiff from making inconsistent legal theories.

By the use of *Junkins*, the plaintiffs attempt to persuade us that with respect to joint tortfeasors they can be sued either jointly, severally, collectively or individually. With that we have no problem. However, nothing in *Junkins* would authorize the plaintiffs in this action to recover by way of settlement based on one set of facts and then maintain another action against a different party based on a totally different set of facts alleged to have caused the same damages.

In acknowledging, the possibility of being overly repetitive, we cannot help but re-emphasize that the federal court lawsuits describe different facts relating to the same damages. In the state court suits the plaintiffs alleged that the pilot negligently piloted the airplane and crashed because of his unsuccessful completion of an allegedly illegal aerobatic maneuver complicated by the negligent maintenance of the airplane by Gulf Park Aviation, Inc., and now the plaintiffs propose that: (1) Butcher was the pilot; (2) he was not negligent; (3) he did not perform an alleged illegal aerobatic maneuver; (4) Gulf Park Aviation, Inc. did not negligently maintain the airplane; and (5) the airplane crashed because Butcher was unable to manipulate the controls because his seat slipped back. We are of the opinion that although one may pursue joint tortfeasors separately, one may not pursue one party on one set of facts and after obtaining a recovery based on those facts, assert a claim for the same damages against one who was not a party to the first action in a subsequent action, which in doing so denies the allegations of the first action.

■ Having decided that the doctrines of judicial estoppel and election of remedies effectively bar the plaintiffs' cause of action, we must now consider whether the plaintiffs' knowledge of the facts and cir-

cumstances at the time of filing and subsequently settling of the state court lawsuits should or should not be considered irrevocable. The plaintiffs rely on *Anaconda Aluminum Co. v. Sharp*, 243 Miss. 9, 136 So.2d 585, 590 (1962), in arguing that:

> ...if a litigant commences a suit, action or proceeding in ignorance of the substantial facts which offer an alternate remedy, he may, when informed adopt a different remedy.

The plaintiffs also direct our attention to *Guy James Construction Company v. Trinity Industries, Inc.*, 644 F.2d 525, 530 (5th Cir.1981), wherein it was determined that:

> Such a pleading (a complaint) will not amount to an election 'unless the choice is made with a full and clear understanding of the problem, facts and remedies essential to the exercise of an intelligent choice'.... It was only upon extensive subsequent discovery that Trinity was found to have violated the manufacturing specifications, and a second amended complaint was, accordingly, filed.... Although James' settlement with DFW may have partially satisfied damages resulting from the delay, the evidence clearly supports James' argument that the settlement agreements were executed in contemplation of various other unrelated claims. The election doctrine will not bar suit when a settlement for less than the stated claim is based upon uncertain and undetermined facts.

We note from the record of the state court actions that there was thorough discovery performed by the parties as permitted by the Mississippi Rules of Civil Procedure. It has been established that the plaintiffs, collectively, designated no less than three (3) expert witnesses who were expected to testify that the pilot and/or Gulf Park Aviation, Inc. were negligent and that such negligence was the sole, proximate cause of the accident. Moreover, Merilyn Butcher, at one point, designated as expert witnesses Jesse Stoneciper and Joe Snodgrass; Mr. Stoneciper to testify as to the negligence of the pilot, and Mr.

Snodgrass to testify as to the negligence of Gulf Park Aviation, Inc. Each of the experts' testimony was to have been based on the personal examination of the wreckage and the observation of the instruments.

The plaintiffs agree that there was extensive discovery, but argue that because there was a state of dispute as to who was piloting the plane and what caused the crash, the parties agreed to settle the actions. We have some trouble following that logic. Surely the plaintiffs are not asserting that they filed a lawsuit without having enough information to know who to proceed against. It has been our experience that one does not just choose a defendant at random and make unsubstantiated allegations of negligence. We do not agree that the plaintiffs did not have the knowledge to make an informed decision concerning Cessna.

Concerning ourselves with *Anaconda* and *Guy James Construction*, we do not think that those cases adequately support the plaintiffs' position.

In *Anaconda* there can be found no support that a party may make a settlement based on one set of facts and then pursue another party on the basis of inconsistent facts. *Anaconda* merely authorizes a change in legal theory once litigation brings to light a previously unknown legal theory.

In *Guy James Construction Co.* there was only one lawsuit in which James alleged that the Airport Board, Trinity, and various subcontractors caused it to sustain damage for the late completion of a contract for the construction of bridges. All of the defendants, except Trinity, settled, and the case was tried against Trinity only. From an award of damages to James, Trinity claimed on appeal that James was barred from maintaining a suit against it because of the doctrine of election of remedies. The Fifth Circuit rejected the claim because Trinity did not plead the defense prior to trial. The Court also held that James was not alleging inconsistent and totally contradictory facts, and that the election of remedies doctrine is not applicable in Texas where a settlement for less

than the stated claim is based upon uncertain and undetermined facts. In the plaintiffs' state court litigation, no one suggested seat slippage. The facts were neither uncertain nor undetermined, as evidenced by Answers to Interrogatories and affidavits from experts. The plaintiffs made no effort to bring Cessna into the earlier litigation; they merely took $75,000.00 each, on the basis of the allegations made in that suit and then brought a separate action against Cessna on facts that require the denial of the facts earlier alleged.

For the above stated reasons, we think that adequate discovery was had in the prior litigation wherein any and all viable remedies should have been uncovered. We do not think that the plaintiffs lacked the knowledge to make an informed choice in obtaining a settlement of their claims and as a result thereof, we hold that the decision to proceed without Cessna was irrevocable. We cannot see how the present actions are distinguishable in legal theory or spirit from the controlling authority of *Coral Drilling* and *O'Briant* and for these reasons Cessna's separate motions for summary judgment against Merilyn Butcher, Martha Noble and Carolyn Durbin are hereby granted.